Coös,
Oct. 6, 1908.

### HOBBS, *Adm'r*, *v.* GEORGE W. BLANCHARD & SONS CO.

An answer in a deposition inconsistent with subsequent testimony of the witness is not evidence of the facts therein asserted, and is admissible only for the purpose of contradiction.

The owner or possessor of land is not liable to trespassers for injuries caused by a dangerous condition of the premises negligently created prior to their entry, but for such only as are intentionally inflicted, or result from his active intervention.

In an action to recover for death caused by an explosion of dynamite, certain evidence deemed sufficient to warrant a submission to the jury of the questions whether the decedent was upon the defendant's premises as an implied invitee, and whether his act which caused the explosion was a trespass, or negligent, or a reasonable and lawful enjoyment of a visitor's privilege, in view of the surrounding circumstances.

CASE, for negligently killing the plaintiff's intestate, a boy fourteen years old. Trial by jury and verdict for the plaintiff. Transferred from the April term, 1907, of the superior court by *Pike*, J., on the defendant's exceptions to the denial of its motions for a nonsuit and that a verdict be directed for it upon each issue tried.

The case is that heretofore reported (74 N. H. 116), and was submitted to the jury upon two issues as to the defendant's negligence: (1) That it carelessly put the dynamite near the camp door after it knew the plaintiff's intestate was on the premises; (2) that, having reasonable grounds to apprehend that trespassers would thereafter come upon the premises, it created an unnecessary and extraordinary hazard, not required for the reasonable prosecution of its business. It also appeared that it was as probable that the boy exploded the dynamite by intentionally striking it, as by accidentally coming in contact with it.

*Henry F. Hollis, Thomas H. Madigan, Jr.,* and *Edmund Sullivan,* for the plaintiff.

*Drew, Jordan, Shurtleff & Morris* and *Rich & Marble,* for the defendant.

PEASLEE, J. It is not necessary to review the decision that putting the dynamite where the deceased could come in contact with it, after his presence on the premises was known, would be

active intervention within the rule as heretofore applied in this state. *Hobbs* v. *Company*, 74 N. H. 116. Conceding that it would be, there was no sufficient evidence to establish the fact. Lacombe (the man who handled the dynamite) was called as a witness for the plaintiff, and denied that he put the dynamite there at the time alleged. The plaintiff was then allowed to contradict the witness by using a deposition in which he testified that he did put it there at that time. The effect of the deposition as evidence was merely to destroy the contradicted statement. It was not positive evidence of the contradicting facts. *Lydston* v. *Company*, *ante*, 23, and authorities cited.

There was no other direct evidence on this question, and the case rests upon the surrounding circumstances. It was the practice and the defendant's rule to leave the dynamite in a safe place. It was not seen by the men in camp, but its position was a little away from the path behind a tree. There was some contradiction in Lacombe's story of how he used his time the morning before the accident. From this it is argued that it is not likely that Lacombe left the dynamite there Saturday, in violation of his habit and of the rule, and to the danger of the men in camp, who would have seen it if it had been there over Sunday. It is further urged that Lacombe's unsatisfactory story of what he did Monday could be found to be a fabrication, and that he was in fact engaged in blasting. On the other hand, it is argued that violation of habit and rule was as likely to occur on Monday as on Saturday, that the dynamite was partly concealed, and that, as Lacombe did many kinds of work, it might as well be inferred that he did one thing as another in the time which he did not account for.

There is in this evidence no substantial preponderance in the plaintiff's favor. Habit and rule were as much violated by leaving the dynamite there on one day as on the other. The evidence that the men did not see it there is of no practical weight. The inference as to what Lacombe was doing Monday is too remote to be considered. It is quite similar to that in *Cole* v. *Boardman*, 63 N. H. 580, 581. "This would be an inference from an unauthorized inference—one presumption resting on another that rests on nothing. The law of evidence requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on groundless inferences." There being no sufficient evidence of active intervention, the submission of that issue to the jury was error, for which the verdict must be set aside.

The plaintiff was also permitted to go to the jury upon the theory that the defendant was liable to trespassers for unusual

and dangerous antecedent acts which the ordinarily prudent man would not have done in the prosecution of the same business. Authority for this proposition was evidently thought to be found in the opinion in this case. *Hobbs* v. *Company*, 74 N. H. 116, 120, 121. But according to the former decisions in this state the rule of the common law is otherwise; and the true interpretation of the opinion is in harmony with those decisions.

The rule is elaborately stated by Judge Jeremiah Smith in 11 Harvard Law Review 349, *et seq.* "To adults entering without permission the landowner owes some legal duties. He is under a duty not to intentionally inflict harm upon a trespasser, save when he is exercising within legal limits the rights of defence and expulsion. He is also, by the better view, under a duty to avoid harming the trespasser by negligent acts which result in actively bringing force to bear upon the trespasser. In other words, he is under a duty to use care not to harm the trespasser by bringing force to bear upon him. It is a mooted question whether this duty is confined to cases where the presence of the trespasser is known to the landowner. Some authorities hold that the owner may, in special circumstances, be under a duty to use care to ascertain whether trespassers are present before he sets in motion a force which would be likely to endanger any such persons if within reach. But the alleged duty, if admitted, is material only when it is sought to make the landowner liable for actively bringing force to bear upon the trespasser. On the other hand, the landowner is under no duty to have his land in safe condition for adult trespassers to enter upon. The law does not oblige him to keep his premises in repair for the benefit of a trespasser. The latter has ordinarily no remedy for harm happening to him from the nature of the property on which he intrudes; he takes the risk of the condition of the premises. It is not negligence in a landowner to use his land for his own convenience in a manner which may occasion danger to future trespassers thereon. It is no breach of duty to a trespasser 'that a man's premises were in a dangerous state of disorder, whatever the consequences to the former.' Nor is there any obligation to warn trespassers of dangers not readily apparent (assuming, of course, that the dangers were not prepared with intent to harm trespassers)." And after considering liability for active intervention, as contrasted with that for mere condition of premises, he says (*p.* 364): "The first case is that of a known, present, and immediate danger; one which is imminent and reasonably certain to result in harm, unless the owner then and there does, or omits to do, some act, the doing or omitting of which would avoid the danger. In the second case the danger may be said to exist chiefly in anticipation; it depends upon the course of

future events, upon circumstances as yet unknown and fortuitous. In the first case the duty imposed upon the landowner involves simply a temporary, generally only a momentary, interruption of his user; requires only temporary precautions; does not include a duty to put the premises in such condition as to prevent the recurrence of similar emergencies in the future, but merely requires the use of care in a present and known emergency. In the second case the duty sought to be established is to guard against future dangers; it must frequently involve permanent changes in the mode of user; sometimes necessitating such expense and trouble as would be practically prohibitive of certain modes of user, and in some cases compelling the abandonment of all profitable use."

His conclusion that in the second case supposed the landowner owes no duty to the trespasser is supported by all that has been decided and by practically all that has been said on the subject by the court of this state. The first case in which the question arose was that of a child trespasser, injured by the dangerous condition of the premises trespassed upon. It was decided that "for injuries received by strangers upon his premises through his want of care, he [the landowner] is liable only to those who may at the time be there by invitation, by license express or implied, or upon legitimate errand." *Clark* v. *Manchester*, 62 N. H. 577 (1883).

Three years later (1886) the same rule was applied to a child trespasser who was attracted to and injured upon an unlocked turntable. "A trespasser ordinarily assumes all risk of danger from the condition of the premises; and to recover for an injury happening to him he must show that it was wantonly inflicted, or that the owner or occupant, being present and acting, might have prevented the injury by the exercise of reasonable care after discovering the danger." *Frost* v. *Railroad*, 64 N. H. 220.

Shortly after these cases were decided others were presented which illustrate another phase of the situation. The Clark and Frost cases related to the condition of premises only. The next case dealt with active intervention, and the condition of premises was not involved. It was held to be the defendant's duty to use ordinary care to discover the presence of the deceased; and the fact as to whether he was a trespasser or a licensee was said to be immaterial except as evidence bearing on the amount of watchfulness that could reasonably be required. *Felch* v. *Railroad*, 66 N. H. 318 (1890). The opinion merely states the rule of law, and recourse must be had to the next case to learn its limitations.

*Mitchell* v. *Railroad*, 68 N. H. 96 (1894), was a suit to recover

for negligently running an engine upon the plaintiff. One defence set up was that the plaintiff was a trespasser. The court said : " If the plaintiff was a trespasser, his misconduct would not relieve the defendants from their obligation to do him no injury that by ordinary care could be avoided. They were responsible for culpable ignorance of his dangerous situation as well as for negligence in any other particular. *Nashua etc. Co.* v. *Railroad,* 62 N. H. 159, 162–164 ; *Felch* v. *Railroad,* 66 N. H. 318, 320. The doctrine of *Clark* v. *Manchester,* 62 N. H. 577, and *Frost* v. *Railroad,* 64 N. H. 220, has no application. What is there said is to be read in the light of the facts under consideration. There is a broad difference between the case of a trespasser meeting with an injury by reason of the dangerous condition of the defendant's premises, and that of an injury caused by the defendant's active intervention." Chief Justice *Doe* and Judge *Blodgett* dissented upon the ground that the charge probably gave the jury to understand that the defendant's duty toward the plaintiff was the same whether he was or was not a trespasser.

In 1897, the case of a trespasser injured by the continued operation of machinery in a mill was decided adversely to the plaintiff. *Buch* v. *Company,* 69 N. H. 257. The opinion further explains the landowners' duty to a trespasser : " They are bound to abstain from any other or further intentional or negligent acts of personal violence—bound to inflict upon him by means of their own active intervention no injury which by due care they can avoid. They are not bound to warn him against hidden or secret dangers arising from the condition of the premises, . . . or to protect him against any injury that may arise from his own acts or those of other persons. In short, if they do nothing, let him entirely alone, in no manner interfere with him, he can have no cause of action against them for any injury that he may receive. On the contrary, he is liable to them for any damage that he by his unlawful meddling may cause them or their property."

Up to this time the distinction between the two lines of cases seems to have been carefully observed. In 1898, they were contrasted one with the other, and the suggestion was made that the decisions in the Felch case and the Mitchell case,—that there was a duty to anticipate (to some extent) the trespasser's presence, so as not to actively do him injury,—were contrary to the doctrine of the other cases. *Shea* v. *Railroad,* 69 N. H. 361. While this deduction was erroneous, it did not affect the result in that case, as it was one of active intervention and no evidence was found to allow the plaintiff to go to the jury.

In the following year (1899) recovery by a trespasser upon a claim as to condition of premises only was denied in two cases.

*Leavitt* v. *Company*, 69 N. H. 597 ; *Casista* v. *Railroad*, 69 N. H. 649.

*Davis* v. *Railroad*, 70 N. H. 519 (1900), applies the correct rule, in substance, though with some changes in terminology. It was then thought that the Shea case had somewhat extended the rule as to a duty to anticipate the presence of trespassers. But bearing in mind that the Shea case was one of active intervention, it becomes apparent that what was said concerning duty as to condition of premises was not a part of the decision of the question presented.

The rule of the Mitchell and Shea cases " does not mean that the defendants were bound to ascertain and take precautions in reference to the plaintiff's possible or chance presence in a dangerous situation upon their premises, but that they were required not to actively injure him if circumstances existed that warranted their anticipating his presence in such a situation as a probable occurrence." *Myers* v. *Railroad*, 72 N. H. 175.

The case of *Carney* v. *Railway*, 72 N. H. 364, 370, goes to the extreme verge of the law in holding that a trespasser, whose presence there was no duty to anticipate, might recover if there was a negligent failure to look out for other persons, whereby the plaintiff's presence was not discovered, as it would have been if the defendant's duty to third persons had been performed. *McGill* v. *Company*, 70 N. H. 125, 127 ; *Hughes* v. *Railroad*, 71 N. H. 279, 284. But however that may be, as the case is one of active intervention it is not an authority against the usual rule as to condition of premises merely.

In *Minot* v. *Railroad*, 73 N. H. 317, it is said that " reasonable men might also find that, having reason to anticipate a human being might be in a position to be seriously injured by the action contemplated, men of ordinary prudence, having regard to their general obligation to so conduct their lawful business as not to injure others, would not set in motion forces which might have that result, without taking some precautions to prevent it." The case was a typical one of active intervention, and the phrase, " their general obligation to so conduct their lawful business as not to injure others " is to be understood as applying to the case in hand. It was said of contemplated action, as related to persons already in a situation to be injured by the forces about to be set in motion. It cannot mean that the principle enunciated creates a legal duty under all circumstances. " The maxim that a man must use his property so as not to incommode his neighbor, only applies to neighbors who do not interfere with it or enter upon it. *Knight* v. *Abert*, 6 Pa. St. 472. To hold the owner liable for consequential damages happening to trespassers from the lawful and

beneficial use of his own land would be an unreasonable restriction of his enjoyment of it." *Frost* v. *Railroad*, 64 N. H. 220, 222.

*Brown* v. *Railroad*, 73 N. H. 568, was another case of actively bringing force to bear upon the trespasser, and the decision is put upon that ground. *Ib.* 573. The same line of reasoning is adopted in *Duggan* v. *Railroad*, 74 N. H. 250.

In *Hughes* v. *Railroad*, 71 N. H. 279, it is said that upon certain evidence it could not be inferred that the use of the premises "was unnecessary or improper" (*p.* 285). It might be thought that there was here a suggestion that from evidence of unnecessary or improper use it could be found that the injury was "intentionally or wantonly inflicted" (*p.* 284). The decision is put upon the ground that, when "conducting their lawful business in a manner which there was no offer to prove was illegal or improper," the defendants were not liable to a trespasser. What was said is not to be taken as laying down a rule or making a suggestion that the landowner is liable to trespassers in an action for negligence, based upon the condition of his premises. It was carefully guarded, at the outset, as merely an answer to the plaintiff's claim. "It is claimed that 'throwing away poisons or explosives is an altogether different case.' . . . The claim is understood to stand upon the ground that, though a landowner is not liable for failure to take active measures for the protection of trespassers according to the authorities above cited, he is liable for injuries intentionally or wantonly inflicted" (*p.* 284).

It will be seen that every case in this state has attempted to follow the principles enunciated by Judge Smith. If expressions susceptible of a different construction are to be found in some opinions, yet, taken as a whole, they form a consistent body of authorities. In the absence of intentional injury, the landowner (or possessor) is not liable to trespassers except in the case of active intervention. A mere condition of his premises, previously created, cannot be made the basis for such a liability.

If the former opinion in this case is capable of a construction which is a departure from the established law of the state, it is manifest that no such application of the language used was intended. It limits the proposition to "dangers created at the time," to "creating upon the land a concealed danger," to performing "at the time an unnecessary affirmative act." The court was merely elaborating the principle which is "otherwise expressed when it is said that the landowner is not liable to a trespasser or bare licensee for the careless use of his land, in the absence of his active intervention. See 11 Harv. Law Rev. 349, 360–366." *Hobbs* v. *Company*, 74 N. H. 116, 121.

It is not necessary to now consider whether the theory that contributory negligence, or other fault of the plaintiff, is a defence to actions sounding in negligence, while such contributing fault is not a defence when the injury was intentionally inflicted (*Cunningham* v. *Company*, 74 N. H. 435), underlies the rule expressed in the terms " active intervention " and " actively bringing force to bear." Whether the true limit of a trespasser's right to recover lies along the line of actual intent in the infliction of the injury upon him, or whether the more liberal rule heretofore applied in this state is the correct one, the result in the present case is the same. In neither view is the possessor of land liable to trespassers because at some time prior to their entry he carelessly, but in good faith and for no evil purpose, created a dangerous situation upon his premises.

There was in the present case no evidence either of intentional injury or of active intervention, and the plaintiff cannot recover unless the deceased was rightfully upon the premises. Upon the former transfer of the case, it was held that there was no evidence from which an implied invitation could be found. The test to determine when an invitation may be implied is thus stated by Chief Justice *Bigelow :* " There are cases where houses or lands are so situated, or their mode of occupation and use is such, that the owner or occupant is not absolved from all care for the safety of those who come upon the premises, but where the law imposes on him an obligation or duty to provide for their security against accident and injury. . . . The general rule or principle applicable to this class of cases is, that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement, or inducement, either expressed or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liabil-

ity; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use." *Sweeny* v. *Railroad*, 10 Allen 368, 373, 374; *Nolan* v. *Traction Co.*, 74 N. J. Law 559.

"The proof necessary to sustain an action of this aspect must be found in the circumstances of the particular case. In such cases, if there be evidence tending to show inducement or invitation, it becomes a question of fact for the jury whether the conditions exist under which a legal duty is imposed upon the owner of the premises to exercise care for the plaintiff's safety." *Phillips* v. *Library Co.*, 55 N. J. Law 307, 315.

When, as a matter of habit and as an incident to the way business is carried on, customers wait about a creamery for an hour, it is not inappropriate to say that they are there by the owner's invitation. *True* v. *Creamery*, 72 N. H. 154, 156.

Applying these principles to the proof produced at the trial, it appears that there was substantial evidence of implied invitation. The defendant maintained several small communities in the township of Success, at one time provided a school at one of them, and allowed the dwellers there to freely visit from one household to another. Dances were held there, and a short time before the accident a considerable number of outsiders visited this camp. There was also testimony that visitors came to Camp No. 38 "once in a while."

A lumber camp is not a prison, a fort, or a pest-house. It is the home provided by the employer for his employees. Unless the evident is to be disregarded, it must be acknowledged that the social instinct of humanity has some existence even among the persons who inhabit lumber camps. The camp and its environs were not the defendant's in the exclusive sense that the mill was the property (or possession) of the Amory Company, the turntable that of the railroad, or the reservoir that of the city of Manchester. Having established such a place of human abode, it could be found that the defendant impliedly invited visitors to come there to such an extent as would be reasonable, considering the station in life of the parties interested. While it could not be found that the men had authority to invite a visitor because of their positions in charge of the work, or because the presence of such invitee would directly promote the defendant's business, it could be found that they had such authority from the fact that the defendant undertook to there maintain for them a place of abode.

If it should be found that the invitation to the boy was a reasonable exercise of the implied authority to have visitors at the

camp, it is evident that there would be ample ground for finding that the defendant was negligent as to such invitees. *True* v. *Creamery*, 72 N. H. 154; *Stevens* v. *Company*, 73 N. H. 159. Because there was sufficient evidence of invitation and of negligence as to invitees, the plaintiff was entitled to go to the jury upon the issue of the defendant's fault.

The conduct of the deceased remains to be considered. It now appears to be as probable that the explosion was caused by his intentionally striking the dynamite as by his coming in contact with it accidentally. As the case is now presented, the defendant's motion for a nonsuit should have been granted unless the plaintiff might recover on either view of the facts. *Wright* v. *Railroad*, 74 N. H. 128. It must be assumed, therefore, that the boy intentionally struck the blow which resulted in the explosion of the dynamite. But this does not include an assumption that he intentionally exploded dynamite, or that he intermeddled with what he knew he ought to let alone. There was evidence that he was ignorant of the appearance and properties of the explosive, and that he might have mistaken it for a bundle of small sticks, such as would be scattered promiscuously about on premises like these.

It is said that the test to determine whether the boy's acts bar a recovery by his administrator is to ascertain whether the defendant could recover from him the value of the exploded dynamite. If this is a correct statement of the law, it is but saying in other words that the test is whether the boy was doing an illegal act. The things permitted were legal acts. Things not permitted were illegal. The crux of the matter is: what acts were reasonably included in the tacit permission given him to enjoy his visit on the premises?

As has been said, it is not a question of ownership. It is one of reasonably using things one has a right to use to some extent. That the decedent had some right upon the premises, could be found from the facts as to the nature of the place and the knowledge of the defendant's agents. The question, then, is not one between a rightful possessor and an unexpected intruder, but one concerning the relative rights of two parties, each in some degree able to justify his presence upon the premises.

It is not enough to sustain the present motion for a nonsuit to show that the defendant, in its suit to recover the value of the exploded dynamite, could go to the jury. The state of the evidence must be such that in the supposed case a verdict would be directed for the plaintiff company as matter of law. If in that case the defendant might go to the jury, so may the plaintiff in the case at bar. Applying this test to the conduct of the deceased,

the conclusion is irresistible that it might be found that his act was not wrongful. Like any self-reliant backwoods boy, he had gathered the available material to construct a sled. He had some old barrel staves and a hammer, and was searching for nails. While presumably busied about this avocation, he exploded the dynamite which had been negligently left exposed near the camp door. Whether he did this entirely by accident, or by putting his staves upon it when driving nails, or even by striking it intentionally, as he might strike any of the surrounding brushwood, it might reasonably be found that his act was one included in his permission to be in contact with the defendant's possessions. It was an act that might reasonably have been foreseen, and that without any element of malice or even of mischief on the part of the boy.

If a nugget of gold, closely resembling the cobblestones near the camp, had been left lying among them, and it had been lost because the boy (not being able to distinguish it from other cobblestones) threw it at an inquisitive hedgehog, it would be a strange rule of law which would direct that a verdict be ordered for the plaintiff in the company's suit to recover the concealed value of the nugget. *Taylor* v. *Jones*, 42 N. H. 25, 32.

The evidence warranted the submission to the jury of the question whether the boy's act was either a trespass, or negligent, or whether it was a reasonable and lawful enjoyment of a permission to be upon the premises and to act as a boy naturally would in reference to his surroundings.

*Verdict set aside: exception to the denial of the motion for a non-suit overruled.*

All concurred.