Belknap, }
May 5, 1903. }

### TRUE *v.* MEREDITH CREAMERY.

A patron of a creamery, who, while waiting about the building in the ordinary course of the business, stands in a passageway commonly used by such persons, is present at the invitation of the proprietor, who is bound to exercise ordinary care to protect him against dangers reasonably to be apprehended from the operation of machinery at that point.

CASE for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the November term, 1902, of the superior court by *Stone*, J. The jury had a view.

The plaintiff is a farmer. For two or three years before the injury complained of he had carried milk to the creamery of the defendants, where it was weighed on scales situated about six feet from the outside door opening into the main room and about three feet from the nearest point of a belt running over a pulley and operating the separator. After the milk was weighed it was put into the separator, which was made to revolve about 4,000 times per minute, in order to separate the cream. The separated milk was conveyed into tubs set to receive it in an adjoining room, where it was again weighed, and where the plaintiff and other patrons, in turn, received it in their cans to take home. The patrons were accustomed to wait about the premises until the cream was separated, sometimes but a short time and sometimes

more than an hour, according to the time consumed by the process. The belt referred to was about four inches wide, and was parallel with the floor and a few feet above it. The top of the belt from the separator to the pulley was covered.

The plaintiff testified that upon the morning of the accident he took his milk to the creamery. After it was weighed and poured into the separator, he carried the empty cans into the back room to have them filled with milk to take home. He then returned to the front room by the same route, that is, between the scales and the belt. Upon his return, one Hersey asked if he could be weighed on the scales, and the plaintiff replied that he could. As Hersey stepped upon the scales, the plaintiff told a young man standing by that he might do the weighing; and just as he spoke the belt broke, one end striking the plaintiff in the eye and causing the injury complained of. At the time of the accident the plaintiff was watching the scale-beam, and he described his location as "between the young man and the scales, next to the belt, right where they pass back and forth."

There was nothing to prevent the belt from flying as it did after it parted. The plaintiff's attention had never been called to the danger he encountered, nor had he been warned against being between the scales and the pulley. Some time within a year prior to the accident the same belt had parted while operating the separator. A witness for the plaintiff testified that it was a "common thing" for belts of that size to come apart when they are mended by making new holes and putting in new hooks.

At the close of the plaintiff's evidence the defendants' motion for a nonsuit was denied, subject to exception.

*Shannon & Young*, for the plaintiff.

*Jewell, Owen & Veazey*, for the defendants.

WALKER, J. The plaintiff's contention is that the proximate cause of his injury was the negligence of the defendant in using in its business a defective belt, or one so liable to break that under the circumstances the defendant, exercising reasonable care and prudence, ought to have used other precautions than it did use to protect its patrons from injuries reasonably to be apprehended therefrom. If the plaintiff was in the place he occupied at the time of the accident upon the invitation, express or implied, of the defendant, it was the defendant's duty to use ordinary care to protect him from dangers which its agents knew might be apprehended from the operation of the belt, and of which he had little or no knowledge.

"The occupant of land is bound to use ordinary care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, express or implied, for the transaction of business, or for any other purpose beneficial to him ; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. The extent, however, of his obligation is to use ordinary care and prudence to keep his premises in such condition that visitors may not be unnecessarily or unreasonably exposed to danger." 2 Shearm. & Red. Neg., s. 704 ; Poll. Torts 490 ; *Clark* v. *Manchester*, 62 N. H. 577, 579 ; *Frost* v. *Railroad*, 64 N. H. 220 ; *Campbell* v. *Sugar Co.*, 62 Me. 552 ; *Sweeny* v. *Railroad*, 10 Allen 368, 372–375 ; *Bennett* v. *Railroad*, 102 U. S. 577, 580.

It was one of the incidents of the defendant's course of business for the plaintiff and other customers to remain upon the premises for an hour or more while the separator did its work. It is not inappropriate to say that the plaintiff was there on the morning of the accident upon the defendant's invitation. He was not a trespasser or mere licensee, unless for some reason he had no permission as a customer waiting for his milk to occupy the narrow space between the scales and the belt. The defendant had not, by general rules or by special instructions to the plaintiff, forbidden him to occupy any part of the building. If his occupancy of this particular place rendered him a licensee, for whose safety while there the defendant had no duty to perform, that conclusion cannot be reached as a matter of law from the reported facts. In going from the first room to the second, it appears that customers were in the habit of going between the scales and the belt. On the morning of the accident the plaintiff carried his cans into the back room, and having returned, was standing " next to the belt, right where they pass back and forth." If he had received his injury while he was passing along with his cans, or while he was returning, it could not be seriously contended that he was a mere licensee. His position there would be in accordance with the defendant's course of business with its customers and in pursuance of its practical invitation. If the place was a dangerous one to stand in, it was a dangerous place to walk over ; and the fact that the defendant invited its customers to carry their cans over it would furnish a strong probability that they did not object to their standing there. Indeed, the only danger of being in that position arose from its proximity to the belt, which was liable to break and fly at any moment. The facts, that the plaintiff was watching the operation of the scales, and that if he had not adjusted himself in such a

way as to observe the scale-beam the belt would not have hit his eye, are unimportant. The injury might have been less serious if he had been in a different position, but that fact has no legitimate bearing upon the question whether he was a licensee or invitee of the defendant at the time of the accident. It is absurd to say that the act of watching the weighing of Hersey, or of telling him he could be weighed, made the plaintiff a mere licensee or trespasser. If he was properly there upon the invitation of the defendant, his acts which in no way contributed to the breaking of the belt, and which were in fact harmless, did not change the character of his situation. The plaintiff adduced ample evidence to warrant the conclusion that his relationship to the defendant was such as to impose on the latter the duty of using ordinary care to avoid injuring him. *Indermaur* v. *Dames*, L. R. 1 C. P. 274 ; *Gilbert* v. *Nagle*, 118 Mass. 278.

The question remains, whether there was sufficient evidence of the defendant's negligence. Could reasonable men find that it failed to perform its duty of using ordinary care to prevent the plaintiff's injury? Unless the defendant knew or ought to have known that there was a reasonable liability that a person standing between the scales and the belt would be exposed to the danger of bodily harm by the parting of the belt, its neglect of duty could not be found; or, conversely, if men of ordinary prudence in the defendant's position, and having its knowledge of the danger of using such a belt as this one was to operate a separator, would have guarded it, so as to prevent its doing harm to persons rightfully standing near it, or would have notified the plaintiff of the danger, the jury would be warranted in finding the fact of the defendant's negligence. The question is substantially one of fact relating to the conduct of men of ordinary prudence under the circumstances.

The evidence for the plaintiff tended to show that the defendant had knowledge that belts used, as this one was, to produce 4,000 revolutions per minute, were quite liable to break or separate, and that this particular belt, while in use on this machine, had parted some time before the plaintiff was injured. It cannot be doubted that the evidence is sufficient to support a finding that the defendant's omission to adopt appropriate means to prevent accidents naturally resulting from a broken belt was a failure to perform a reasonable duty required of it in the exercise of ordinary care. It cannot be said that reasonable men could not so find. Upon that question, it may be that "reasonable and fair-minded men might differ ; but it cannot be declared that no reasonable man could find as the jury did." *Mitchell* v. *Railroad*, 68 N. H. 96, 116. No claim is made that the plaintiff was guilty of

contributory negligence, and no exception was taken relating to the admissibility of the evidence. The defendant's motion for a nonsuit was properly denied.

*Exception overruled.*

All concurred.