Rockingham, }
April 1, 1924. }

STELLA LOCKE, *Adm'x*, v. JOHN BARTON PAYNE, *Director-General.*

The owner of premises is not bound to maintain them in a safe condition as respects a licensee, but merely to give reasonable information as to existing conditions, not open to his observation, and to otherwise refrain from negligent conduct; and when the licensee upon entering is fully informed as to the situation no duty to give warning exists.

One not a highway traveler and not intending to cross a railroad track is not entitled to the statutory warning by a crossing-whistle.

A general verdict that the defendant is not guilty of negligence includes the finding in his favor of all claims based on alleged specific acts of negligence.

There is no liability for an alleged breach of duty to exercise care so long as no relation exists imposing such a duty; the duty to exercise care arises only from the time such relation begins.

CASE, to recover damages for negligently causing the death of Joseph W. Locke, upon a grade crossing at Newton Junction. Trial by jury and verdict for the defendant.

The evidence tended to prove that at Newton Junction a large number of persons are accustomed to take a morning train, and that while waiting for its arrival they occupy the highway adjacent to the railroad station and close to the grade crossing. Locke was a vender of newspapers and habitually mingled with these prospective passengers in the pursuit of his vocation. There were no crossing-gates, and warnings of the approach of trains were given by a flagman, who was provided with a portable stop signal.

Upon the morning of the accident, one Merrick was approaching the crossing, driving a horse attached to a wagon. Rowell, the crossing-tender, came out and displayed his signal in front of Merrick's horse when the latter was about a team's length from the crossing. The horse was frightened, bolted and threw Locke onto the track, where he was killed by the approaching train. There was evidence that the statutory crossing-whistle was not given, and that the trouble was caused by the breaking of a girth, letting the

wagon onto the horse's heels. Merrick crossed safely in front of the train.

The case was submitted to the jury under instructions that they should find for the plaintiff if Rowell was negligent in frightening the horse, or in being slow in getting out to give warning. The plaintiff also claimed the right to recover for the failure to maintain crossing gates, or to give the statutory warning, and excepted to a refusal to submit these issues to the jury. Transferred by *Branch,* J.

*Sleeper & Brown* (*Mr. Sleeper* orally), for the plaintiff.

*Hughes & Doe* (*Mr. Doe* orally), for the defendant.

PEASLEE, J. It appears that Locke used the defendant's premises and the adjacent highway, where passengers waiting for trains were accustomed to congregate, as a place in which to carry on his business of selling papers. He was not a customer of the railroad, nor was he a highway traveler intending to cross the railroad tracks. The utmost that can be said in the plaintiff's favor is that he was at this place to the knowledge of the defendant. Apparently the defendant did not object to the use he made of the premises, and the questions presented relate to the duty owed to him under such circumstances. In conduct subsequent to his entry the defendant was bound to use ordinary care "when it saw fit to act at all." *Knowles* v. *Company,* 77 N. H. 268, 269. Upon this issue the case went to the jury and the defendant has a verdict.

But the plaintiff claims that the crossing should have been guarded by gates instead of by a flagman, and that this fault is one of which she can complain in this suit. The position cannot be sustained, even if it be assumed that Locke occupied the position of a licensee. As to such a party, the defendant is not bound to maintain its premises in a safe condition. The only duty is to give reasonable information as to existing conditions that are not open to observation, and to otherwise refrain from negligent conduct. Beyond this there is no duty, and the licensee takes the premises as he finds them. *Lambert* v. *Company,* 80 N. H. 126, 129.

It is important to note that the basis for recovery by a licensee in case of a concealed danger is not the existence of the danger, but the failure to give reasonable warning of its existence. The creation of the dangerous situation was no wrong to the plaintiff, for at that time he was not occupying any relation to the defendant.

The situation was lawfully created, as far as the plaintiff is concerned. The recovery is not for past acts, unrelated to the plaintiff, but for present fault, of which the defendant is guilty after the beginning of the relation of the parties gave rise to a duty to act with reasonable prudence in view of the existing situation. The extent of this present duty is well defined. While it is the undoubted rule that the gratuitous lender of his chattels or real property is not liable to the beneficiary for the condition of the property, it has been deemed reasonable to impose upon the owner the duty to disclose secret dangers. He ought not to be permitted to lead the other party into a trap. *Gagnon* v. *Dana,* 69 N. H. 264. All this is but a specific application of the general rules that so long as there is no relation there is no duty, and that from the time the relation arises each party is held to the rule of reasonable conduct.

In the present case, it is apparent that Locke was fully informed as to the situation. He could see how the crossing was protected, and entered upon the premises with full knowledge of that fact. The difficulty with the plaintiff's position is that the wrong complained of consists of past conduct, known to Locke and incapable of correction after his entry upon the scene. As the defendant did not owe Locke any duty to make the premises safe for his prospective entry, no right of action can be based upon a failure to so improve existing conditions. If, instead of entering upon the *locus,* Locke had remained away because of the danger, he could not have recovered damages for a failure to provide him a safe place in which to conduct his business.

The further claim that Locke was one of the public entitled to the statutory warning by the crossing-whistle is also untenable. He was not intending to cross the tracks, and needed no warning to keep off. He was not a highway traveler. *Manning* v. *Railway,* 80 N. H. 404. But if it were conceded that because of the defendant's knowledge of Locke's probable presence there was a duty to give reasonable warning by a crossing-whistle, so that accidents incident to sudden alarms might be avoided, the claim to recover for fault in this respect fails because the evidence and the verdict show that the lack of such warning did not contribute to the accident. Locke needed no warning and Merrick was relying upon the flagman.

The claim that the whistle would have caused the flagman to come out sooner and that the accident would then have been avoided, is disposed of by the verdict. The question whether Rowell was "slow in getting out onto the crossing" was submitted to the jury

as a ground upon which they might find for the plaintiff. The finding that the defendant was free from fault includes one that the conduct of the flagman was reasonable.

It appears that the plaintiff has had the judgment of the jury upon every issue upon which she might have recovered. Whether the issues submitted were more inclusive than the law permits is now immaterial, and the question has not been considered.

*Exceptions overruled.*

SNOW, J., did not sit: the others concurred.