Rockingham,
No. 5136.

HELEN M. DOWD & *a.*

*v.*

PORTSMOUTH HOSPITAL.

Argued June 5, 1963.

Decided July 9, 1963.

Reargued September 4, 1963.

Former result affirmed September 30, 1963.

54

*Shaines & Brown (Mr. Robert A. Shaines* orally), for the plaintiffs.

*Devine, Millimet, McDonough, Stahl & Branch (Mr. Shane Devine* orally), for the defendant.

BLANDIN, J. The defendant claims that the Court erred in failing to instruct the jury as a matter of law that the plaintiffs, Helen M. and Oliver Dowd, Jr., were licensees and also in denying motions for nonsuits and directed verdicts.

The defendant is a charitable institution, the hospital building having been constructed in 1930, for the purpose of caring for the ill and injured and generally to promote the health and welfare of citizens in the community area. It makes no profit and is supported by income from patient services and by gifts. Since about 1933 the hospital has permitted the District Nursing Association to use certain facilities free of charge for a "Well Baby Clinic" wherein babies are brought to a room in the hospital for checkups and examinations by staff physicians of the hospital who are paid by the District Nursing Association. The time of the clinics is advertised in the newspaper by the association.

On the day in question Helen, a resident of Portsmouth who had visited the clinic several times before for the same purpose of having her child examined, appeared with Oliver, Jr. and entered the hospital. As she was descending a flight of stairs

carrying the child over her left shoulder, on her way to the clinic facilities, she slipped and fell, injuring both herself and Oliver, Jr. She claims that the cause of her fall was that the stairs were slippery and that they were improperly maintained and constructed.

The crux of the issue of whether the Court erred in permitting the jury to decide whether the plaintiffs were invitees or licensees depends on what we hold to be the proper test for a determination of the plaintiffs' status. Presently there are two tests to determine what is an invitee. One is the so-called "economic benefit" test and the other the "invitation" test. 2 Harper & James, The Law of Torts, *s.* 27.12, *pp.* 1478-1479. The former is that there must be an economic advantage—actual or potential—to the occupier of the premises, in the plaintiffs' visit, before the latter may become invitees. In the present case, the Court submitted to the jury only the invitation test, so that it is unnecessary to consider whether it could be found that there was any economic benefit, actual or potential, to the defendant from the plaintiffs' visit.

The invitation test does not deny that there may be an economic benefit to the defendant in the plaintiffs' visit or that such benefit alone is sufficient to permit the plaintiff to become an invitee. 2 Harper & James, The Law of Torts, *supra.* However, it would go further and hold that a visitor may become an invitee if the occupier, "by his arrangement of the premises or other conduct has led the entrant to believe [they] 'were intended to be used by visitors' for the purpose which this entrant was pursuing, 'and that such use was not only acquiesced in by the owner or possessor but that it was in accordance with the intention and design with which the way or place was adapted and prepared . . . .'" 2 Harper & James, The Law of Torts, *s.* 27.12, *p.* 1479. This authority goes on to point out that the present trend is toward the more inclusive invitation test. *Id.,* 1479, 1480.

In the situation before us, we believe that long established and easily understood—though not always easily applied—principles of fundamental justice and reasonableness in our law, which are in accord with the invitation test, furnish a sound guide. In the case of *Hobbs* v. *Company*, 75 N. H. 73, the court held that "if there be evidence tending to show inducement or invitation [to enter the premises] it becomes a question of fact for the jury" to determine whether the plaintiff is an invitee. *P.* 81.

"The gist of the liability consists in the fact that the person injured . . . entered the premises because he was led to believe that . . . such use was . . . in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used . . . . " *Menard* v. *Cashman*, 94 N. H. 428, 431.

Applying these principles to the facts here, the jury could find that the stairs had been used for some twenty-five years prior to the accident by members of the community visiting the Well Baby Clinic for the same purpose as by the plaintiffs — to maintain the health and welfare of their children — and that this had been done with the knowledge and approval of the defendant. They could also find that this use was in accordance with what the plaintiffs had been led to believe was the intention and design of the defendant. Also, they could conclude that the hospital, as a place open to the public for the general purpose of promoting the health and welfare of the community, as well as treating the sick and injured, could not ignore the customary actions of the public with reference to the use of its stairs generally, and in particular to its use of them for the purpose of visiting the Well Baby Clinic. *Pickford* v. *Abramson*, 84 N. H. 446, 450.

In all the circumstances, the question of whether the plaintiffs were invitees or licensees was properly submitted to the jury, and the defendant's exceptions thereto are overruled. Insofar as *Sandwell* v. *Hospital*, 92 N. H. 41, might be thought to express a different view it is not to be followed. In this state, the law is that hospitals and other charitable institutions enjoy no immunity from liability for negligence. *Wheeler* v. *Monadnock Hospital*, 103 N. H. 306, 307.

The remaining issue is whether we should sustain the finding of the jury, which took a view, that the hospital failed in its duty to the plaintiffs to construct and maintain reasonably safe stairs. The transcript discloses that a qualified expert testified unequivocally that the stairs were unsafe due to faulty construction and maintenance, that certain treads were too narrow and that the substance covering them was "too slippery" when installed and had become even more so with "use." The defendant argues that ordinarily a flight of stairs is not unreasonably dangerous when traversed in daylight. 2 Harper & James, The Law of Torts, s. 27.13, *pp*. 1489, 1490. However, considering the nature of the use to which the defendant knew these

stairs were subjected, we believe it could be found that it failed to exercise reasonable care for the plaintiffs' safety in accordance with its duty. *Jacobson* v. *Yoken's, Inc.*, 104 N. H. 331.

The motions for nonsuits and directed verdicts were properly denied, and the defendant's exception to the Court's ruling is overruled. A further examination of the record discloses no error in the trial, and the order is

*Judgment on the verdicts.*

All concurred.

On REHEARING. After the foregoing opinion was filed, the defendant's motion for rehearing was granted.

*Devine, Millimet, McDonough, Stahl & Branch* (*Mr. Shane Devine* orally), for the motion.

*Shaines & Brown* (*Mr. Robert A. Shaines* orally), opposed.

BLANDIN, J. The defendant, in its motion for a rehearing, argues that "The invitation test is not applicable to the circumstances of these actions" and that it does not represent our law or the modern view.

We believe that the importance of the issues involved and the uncertainty and conflicts which appear to exist in the cases and in various textbooks (63 Yale L. J. 144, 145) warrant further elaboration of our opinion. A preliminary matter not stressed at the original hearing, but mentioned upon rehearing, is that the accident happened in that portion of the defendant's premises used as the nurses' home. It is neither claimed nor do we perceive that this affects in any manner the legal principles involved.

Considering the defendant's contentions in reverse order, it appears clear from the authorities that the modern trend favors the use of the more inclusive invitation test as well as the economic benefit test (2 Harper & James, The Law of Torts, s. 27.12, *pp.* 1478, 1480). In an article by Prosser, "Business Visitors and Invitees" 26 Minn. L. Rev. 573, he repudiated his earlier view that the economic benefit test, upon which the defendant relies, was exclusive and advocated adoption of the invitation test as well. It has since been authoritatively stated that "the

great majority of the courts" now accept the invitation test. Prosser on Torts (2d *ed.*) *s.* 78, *p.* 454, 456 (1955); *Handleman* v. *Cox*, 39 N. J. 95, 109.

Perhaps the most significant support for the invitation test appears in Restatement (Second), Torts, *s.* 332 (Tentative draft No. 5, 1960). This authority bluntly states that restricting the class of invitees to only those who meet the economic benefit test is "out of line with the holdings of the great majority of the cases which have considered the question." *Id.*, *s.* 332, *p.* 59. It appears that this authority also has modified its former stand as stated in Restatement, Torts, s. 332.

The tentative draft defines an invitee as follows: "(1) An invitee is either a public invitee or a business visitor. (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." The authority then goes on to explain that the exclusive economic benefit test "originated with the writer of a forgotten treatise" in 1878, and that it does not represent either the better or the modern view. *Id.*, *pp.* 59-60.

In summary upon this phase of the matter, we hold that in addition to the economic benefit test the invitation test as established in our former opinion and as set forth in terse form in the Restatement (Second), Torts, *s.* 332(2) (Tentative draft No. 5 (1960)), *supra*, is also the law in this state. In the case before us, it could be found that the plaintiff entered the hospital's premises, as a member of the public, in response to a public invitation issued by the District Nursing Association under express or implied authorization by the hospital. She was injured upon a part of the premises over which the hospital retained control and which it could reasonably be found to have expected her to use. The fact that it derived no economic benefit from the transaction should not relieve it from a duty to discover and remedy any unreasonable risks of injury arising out of the invited use. See Restatement (Second), Torts, *s.* 359, *comment g* (Tentative draft No. 5 (1960)); Prosser, *supra*; 26 Minn. L. Rev. 573, 595, 602. The evidence warranted submission to the jury of the issue of the plaintiffs' status and its finding is sustainable.

Insofar as *Hashim* v. *Chimiklis,* 91 N. H. 456; *Sandwell* v.

*Hospital*, 92 N. H. 41, and the line of cases following them may be thought to limit the rule exclusively to the economic benefit test, they are overruled.

We do not adopt the broader rule merely because it represents a "modern trend." We follow it because we believe it best expresses the principles of justice and reasonableness upon which our law of torts is founded. *Hobbs* v. *Company*, 75 N. H. 73, 80-81.

In conclusion, we adhere to the principles and the holding of our original opinion. The order is

*Former result affirmed.*

All concurred.
September 30, 1963.