Belknap,
No. 5257.

PAUL A. DUNLEAVY, *by his father and next friend & a.*

*v.*

ELMER CONSTANT *& a.*

Argued September 11, 1964.
Decided November 4, 1964.

*James J. Kalled* (by brief and orally), for the plaintiffs.

*Nighswander, Lord & Bownes* and *Conrad E. Snow* (*Mr. Snow* orally), for the defendants.

LAMPRON, J.   The opening statement was substantially as follows:   On August 18, 1960, the defendants, Elmer and Violet Constant, owned a one-family homestead in Lakeport with an appurtenant garage, driveway, and a parking place for automobiles.  Violet's car had broken down a short time previously and was then parked on their property.  Elmer agreed to repair it and asked the plaintiff Paul's father, John Dunleavy, to assist him.  Elmer invited John and his wife and two children to come and have supper at the Constant home.  During the periods before and after supper John and Elmer were to work on the automobile.  The Dunleavys arrived at about four o'clock in the afternoon.

"John M. Dunleavy has little experience in automobile repair and is not mechanically inclined.  Elmer Constant is an experienced mechanic."  During the entire period of their work on the car, Elmer was in charge of the entire operation and John followed his instructions.

Elmer borrowed a jack at a filling station by means of which he raised his wife's car.  When the automobile was up, the jack handle protruded about 3 to 4 feet from the side of the car and about 3 to 4 inches above the ground.  The handle on this jack "in a matter of seconds" could be removed after the car was raised and reattached to bring the vehicle down.  However this handle had been left protruding as above described for at least one hour before Paul, then aged six, tripped over it.  "The defendants were aware, for at least one hour before the accident that many small children were playing on the defendants' premises near the disabled automobile."

About 9:30 P. M., when it was dark, the decision was made that John would stay and help Elmer.  His wife and children would return to their home.  Mrs. Dunleavy called Paul and "while Paul was proceeding to go to his mother's automobile

pursuant to her call, he tripped over the aforementioned protruding jack handle and as a result thereof fell to the ground and broke his arm.''

At the time of the accident John Dunleavy was out of sight completely under the car working on the engine with a trouble light and did not see the accident.

Plaintiff alleges that the causal acts of negligence of the defendants are the following:

"1. Knew or should have known of the danger of the subject jack-handle in darkness with young children running around and failed to warn or protect the plaintiff against same.

"2. Failed at any time to light the area where the protruding jack-handle was located so that it could be seen by the playing children.

"3. Failed to exercise reasonable care for Paul's safety in accordance with their duty to refrain from pursuing an activity that subjected Paul to an unreasonable risk of harm.

"4. After it got dark under all the circumstances failed to exercise reasonable care to see that the man-made dangers of the premises were corrected."

The duties and obligations of an owner or occupant of property toward a licensee on his premises differ from those owed an invitee thereon. *Maxfield* v. *Maxfield*, 102 N. H. 101; *Jacobson* v. *Yoken's Inc.*, 104 N. H. 331; Restatement (Second), Torts, *s.* 343A (Tentative draft No. 5, 1960). A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent. *Id., s.* 330; 2 Harper & James, The law of Torts, *s.* 27.1, *p.* 1431. Although a social guest normally is invited, and even urged to come, he is considered a licensee. *Mitchell* v. *Legarsky*, 95 N. H. 214; Restatement (Second), Torts, *supra, comment* h; 2 Harper & James, The Law of Torts, *s.* 27.11, *p.* 1476.

An invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public (public invitee); or a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land (business invitee). *Dowd* v. *Portsmouth Hospital*, 105 N. H. 53, 58.

There is no allegation that defendants' one-family homestead was held open to the public so that Paul could not be a public invitee. *Dowd* v. *Portsmouth Hospital, supra.* We find no need

to decide whether the services which the father, John Dunleavy, was performing for the defendants were substantial enough and were clothed with the requisite beneficial or economic interest to make the father an invitee instead of a social guest. *Spring* v. *Burke*, 194 N. E. 2d 626 (Mass. 1963); *Davies* v. *McDowell National Bank*, 407 Pa. 209; *Ciaglo* v. *Ciaglo*, 20 Ill. App. 2d 360; *O'Brien* v. *Shea*, 326 Mass. 681; Restatement (Second), Torts, *s.* 332 (Tentative draft No. 5, 1960). See Annot. 95 A.L.R. 2d 992. Assuming that the father was an invitee, we are of the opinion that, unlike the situation which prevails with children who accompany their parents to a public place of business, Paul would not obtain the status of an invitee when he accompanied his father to the private dwelling of the defendants. See Annot. 44 A.L.R. 2d 1319; Restatement (Second), Torts, *s.* 332, *comment* g, *p.* 72 (Tentative draft No. 5, 1960).

We hold as a matter of law that the six-year-old child, Paul Dunleavy, was a social guest and consequently a licensee at the time of his accident on the premises of the defendants. *Wheeler* v. *Monadnock Hospital*, 103 N. H. 306.

"The law is well established here and, we believe, by the better authorities elsewhere, that in these circumstances the general rule is that the only duty owed the plaintiff by the defendants relative to the condition of the premises was to use reasonable care to warn . . . [him] of dangers which they knew about and which were likely to be undiscovered by . . . [him]." *Maxfield* v. *Maxfield*, 102 N. H. 101, 103.

"If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it.

"On the other hand, the possessor should realize that the fact that a dangerous condition is open to the perception of children licensees may not be enough to entitle him to assume that they will appreciate the full extent of the risk involved therein. Children, through childish inattention, may fail to observe conditions which an adult might reasonably be expected to discover. Even if they know of the condition, there may be risks which it is not reasonable to assume that children will appreciate." Restatement, Torts, *s.* 342, *comment* b; *Smith* v. *Animal Farm*, 99 N. H. 243.

The opening statement shows that Paul Dunleavy was a child of six at the time of the accident. Part of his deposition, made an exhibit in this court by agreement, shows that he had noticed

the jack-handle and that he knew it was sticking out. "Q. How did it happen that you fell over it? . . . A. Well, it was dark, and I couldn't see it; and I fell over it."

It is also stated that the jack-handle was protruding approximately 3 to 4 feet from the side of the car and about 3 to 4 inches above the ground for over an hour before the accident. "The defendants were aware, for at least an hour before the accident that many small children were playing on the defendants' premises near the disabled automobile." Plaintiff's statement says that "in a matter of seconds" the jack-handle could be removed from the jack after the car was raised and replaced when needed to lower it. Also that defendant Elmer Constant was an experienced mechanic. Paul tripped over the jack-handle about 9:30 in the evening when it was dark.

We think it could be found unreasonable to assume that the risk of falling over the jack-handle in the dark was one a child of six would appreciate even though he might be assumed to appreciate the risk of falling over it in the daylight. *Smith* v. *Animal Farm*, 99 N. H. 243, 246; *Labore* v. *Company*, 101 N. H. 123, 126; *Wheeler* v. *Monadnock Hospital*, 103 N. H. 306, 308. If evidence is produced to support the statements made in the opening, it will permit, but not compel, a jury to find that Paul Dunleavy, as a licensee, was injured by a condition on defendants' premises which they knew involved an unreasonable risk of harm to him. It will further permit a jury to find that the defendants had reason to believe that Paul would not realize or appreciate this danger and that they failed to exercise reasonable care either to make the condition safe, or to warn Paul of the condition and of the risk involved; and that no negligence of his contributed to his injury. *Davis* v. *Company*, 100 N. H. 12; *Wheeler* v. *Monadnock Hospital, supra*; Restatement (Second), Torts, *s.* 342 (Tentative draft No. 5, 1960).

Defendants' motion for a nonsuit should be denied.

*Remanded.*

All concurred.