Hillsborough
No. 7325

ROBERT OUELLETTE & a.

v.

J. RICHARD BLANCHARD

September 30, 1976

*Holland & Aivalikles (Mr. Francis G. Holland* orally) for the plaintiffs.

*Sullivan, Gregg & Horton* and *Francis L. Cramer (Mr. Cramer* orally) for the defendant.

GRIFFITH, J.   These are actions to recover for personal injuries to the minor plaintiff, Jaye Ouellette, and consequential damages to her father, Robert Ouellette, in a burning accident on property of the defendant. The plaintiffs allege that on July 23, 1973, the

defendant, with a permit, was burning rubbish in an unsupervised fire on his premises. The plaintiff Jaye Ouellette, then ten years of age, went onto the property with other children and with them threw sand on the fire. Jaye stepped on some hot coals and fell forward on her hands burning both her feet and hands.

The defendant moved for a nonsuit at the close of the plaintiffs' opening statement on the grounds that the opening indicated Jaye was probably a trespasser on defendant's land and at best might be found a licensee. Defendant argued that even were she found to be a licensee defendant owed her no duty of care with regard to hazards known to her. The plaintiffs argued that in *Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528 (1973), this court had strongly indicated an intention to abolish judicially determined status distinctions as the sole determinant of the standard of care owed by an occupier of land to an entrant on the land. The Trial Court, *Flynn,* J., denied defendant's motion for nonsuit subject to exception and reserved and transferred without ruling the current applicability of status distinctions to entrants on land.

In *Sargent v. Ross supra,* we abolished the limited immunity from liability which landlords had previously enjoyed in regard to injuries caused by defective or dangerous conditions in the leased premises. We noted that "considerations of human safety within an urban community dictate that the landowner's relative immunity, which is primarily supported by values of the agrarian past, be modified in favor of negligence principles of landowner liability." *Sargent v. Ross, supra* at 396, 308 A.2d at 533, quoting from Recent Development, *Abrogation of Common-Law Entrant Classes of Trespasser, Licensee, and Invitee,* 25 Vand. L. Rev. 623, 640 (1972). Accordingly, we there applied to landlords the general principles of tort law under which liability is ordinarily imposed upon persons for injuries caused by their failure to exercise reasonable care under all the circumstances. Our reasoning in *Sargent* applies equally in the area of landowners liability.

The three-pronged classification of entrants on land was born judicially in the nineteenth century. In the initial rigid classifications, all entrants without the consent of the landowner were trespassers as a matter of law and the landowner's liability was limited to intentional injuries. *Clark v. Manchester,* 62 N.H. 577 (1883). An entrant on land with the permission of the owner but for the entrant's purposes was a licensee and entitled only to a warning of hidden dangers. *Locke v. Payne,* 81 N.H. 266, 124 A. 668 (1924). An invitee was an entrant on the property for the transaction of

business with the occupier and as to him the ordinary rules of negligence were applicable to the occupier. *True v. Creamery,* 72 N.H. 154, 55 A. 893 (1903).

Generally "the consensus of modern opinion is that the special privilege these rules accord to the occupation of land sprang from the high place which land has traditionally held in English and American thought...." 2 F. Harper & F. James, The Law of Torts 1432 (1956). Whatever its origin, the original rigid classifications and harsh results have been subjected in the passage of time to the twin forces of the industrial age and the development of negligence law. The result has been a refining and erosion of the original rules with exceptions and distinctions piercing the landowner's cloak of immunity.

"In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among the traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care under all the circumstances.' " *Stewart,* J., in *Kermarec v. Compagnie Generale,* 358 U.S. 625, 630-31 (1959).

Some examples from our own jurisdiction are indicative of the accuracy of the above characterization of the common law in this field. In *Buch v. Company,* 69 N.H. 257, 44 A. 809 (1897), an eight-year-old boy had been brought into a textile mill by his thirteen-year-old brother to learn the brother's job. The boy had been there a day and a half when he caught his hand in a gear box. He was held a trespasser as a matter of law and although his presence was known to the overseer the owners owed him no duty to warn of hidden dangers or to protect him from injury when, by acting, the landowner could do so. The later rule was repudiated in *Castonguay v. Company,* 83 N.H. 1, 136 A. 702 (1927), which held a landowner could be liable for failure to act to prevent injury to a known trespasser. The general rule that a landowner was immune to all but intentional acts against a trespasser was broadened at an early time to include negligent acts not only

against known trespassers but against trespassers the landowner should have known of. *Mitchell v. Railroad,* 68 N.H. 96, 34 A. 674 (1894). *Hashim v. Chimiklis,* 91 N.H. 456, 21 A.2d 166 (1941), holding that a business invitee who asked to use the toilet became a licensee, and *Sandwell v. Elliott Hospital,* 92 N.H. 41, 24 A.2d 273 (1942), placing visitors to the hospital sick in the licensee niche, were specifically overruled in *Dowd v. Portsmouth Hospital,* 105 N.H. 53, 193 A.2d 788 (1963), expanding the invitee class to include persons on the premises for purposes for which the place was designed. *See also Stevens v. Bow Mills Methodist Church,* 111 N.H. 340, 283 A.2d 488 (1971). Both of the later cases could have claimed kinship to *Hobbs v. Company,* 75 N.H. 73, 70 A. 1082 (1908), holding a jury could find a boy invited to visit a lumber camp by a lumber jack an invitee, but not with *Castonguay v. Company,* 83 N.H. 1, 136 A. 702 (1927), holding schoolchildren invited to visit a mill by the manager were trespassers as a matter of law.

This jurisdiction rejected the attractive nuisance theory in child cases in *Frost v. Eastern RR,* 64 N.H. 220, 9 A. 790 (1886), and early cases rigidly classified children as trespassers as a matter of law. *See, e.g., Buch v. Company,* 69 N.H. 257, 44 A. 809 (1897); *Lavoie v. Nashua Gummed & Coated Paper Co.,* 79 N.H. 97, 105 A. 4 (1918). However, more recent cases such as *Dunleary v. Constant,* 106 N.H. 64, 204 A.2d 236 (1964), and *Smith v. Animal Farm,* 99 N.H. 243, 109 A.2d 39 (1954), clearly indicate that early child trespassers would now have their status determined by the jury as a question of fact. Indeed it is apparent that if there is a consistency in our cases it lies in the trend away from treating the status of the entrant to be determined as a matter of law rather than fact.

Rather than continue to embroider the garment when the basic fabric has worn out, many courts have now refused to predicate a landowner's liability solely on the status of the entrant. The United States Supreme Court in 1959 declared the common law distinctions to be of decreasing viability and declined to impart them into the law of admirality. Mr. Justice Stewart characterized the state of the law at that time as moving toward "imposing on owners and occupiers a single duty of reasonable care in all the circumstances." *Kermarec v. Compagnie Generale,* 358 U.S. 625, 631 (1959).

The California Supreme Court became the first American court to abolish the traditional status distinctions in *Rowland v. Christian,*

69 Cal. 2d 108, 443 P.2d 561, 70 Cal. Rptr. 97 (1968). Substituting a test of reasonable care under all the circumstances the court observed, "[c]omplexity can be borne and confusion remedied where the underlying principles governing liability are based upon proper considerations. Whatever may have been the historical justifications for the common law distinctions, it is clear that those distinctions are not justified in the light of our modern society and that the complexity and confusion which has arisen is not due to difficulty in applying the original common law rules ... but is due to the attempts to apply just rules in our modern society within the ancient terminology." *Id.* at 117, 443 P.2d at 567, 70 Cal. Rptr. at 103.

The *Rowland* rationale and result have been adopted entirely by a number of jurisdictions. *Basso v. Miller,* 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976)); *Pickard v. City and County of Honolulu,* 51 Hawaii 134, 452 P.2d 445 (1969); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (D.C. Cir. 1972); *Mariorenzi v. Joseph DiPonte, Inc.,* 333 A.2d 127 (R.I. 1975); *see* Annot., 32 A.L.R.3d 508 (1970).

However, a few courts have contented themselves with abolishing the distinction between invitees and licensees but have retained the trespasser classification. *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); *Mounsey v. Ellard,* 297 N.E.2d 43 (Mass. 1973); *Antoniewicz v. Reszcynski,* 236 N.W.2d 1 (Wis. 1975). This was the approach taken by England, by statute, the jurisdiction in which the traditional distinctions originated. *See* Occupiers' Liability Act, 5 & 6 Eliz. 2, c. 31 (1957).

We are not disposed to limit our holding to abolishment of two-thirds of the trichotomy and to retain the category of trespassers as a legal area of immunity. Justice Kaplan in his concurring opinion in *Mounsey v. Ellard,* 297 N.E.2d 43, 57 (Mass. 1973), noted: "[I]t is sometimes just as hard to distinguish trespassers from licensees or invitees, as to distinguish licensees from invitees; and the class of trespassers is probably just as various as either of the other classes. The very effort at dry classification and differentiation puts the emphasis at the wrong places." Justice Kaplan also noted the unsatisfactory condition of the English law as to trespassers after they were excluded from the Occupiers' Liability Act. *See, e.g., Pannett v. McGuiness & Co., Ltd.,* 2 Q.B. 599 (C.A. 1972) (upholding verdict for trespassing child who fell in the

fire); *Herrington v. British Railways Board,* 2 W.L.R. 537 (H.L. (E) 1972).

Our own cases previously reviewed indicate the correctness of Justice Kaplan's concurring opinion and that to retain trespassers as a separate category will continue the difficulties inherent in separating licensees from trespassers and "good trespassers" from "bad trespassers". Indeed, in their rejection of the Massachusetts limitation the Rhode Island Supreme Court called attention to *Pridgen v. Boston Housing Authority,* 308 N.E.2d 467 (Mass. 1974), where, nine months after Justice Kaplan's warning, the Massachusetts court began their classification of "good" trespassers with the "trapped trespasser" who was entitled to be treated with reasonable care by the landowner. *Mariorenzi v. Joseph DiPonte, Inc.,* 333 A.2d 127, 132 (R.I. 1975).

Whatever the social and policy considerations that led to the judicial creation of the invitee, licensee and trespasser immunities they no longer retain their viability under modern conditions and it is fitting and proper that they be laid to judicial rest. "The abiding respect of this court for precedent and stability in the law is balanced by an appreciation of the need for responsible growth and change in rules that have failed to keep pace with modern developments in social and juridical thought." *Sargent v. Ross,* 113 N.H. 388, 398, 308 A.2d 528, 534 (1973). We can no longer justify adherence to a system "which is at the same time complex, confusing, inequitable, and, paradoxically, nonuniform." *Peterson v. Balach,* 294 Minn. 161, 168, 199 N.W.2d 639, 644 (1972).

Accordingly, we hold that henceforth in New Hampshire owners and occupiers of land shall be governed by the test of reasonable care under all the circumstances in the maintenance and operation of their property. The character of and circumstances surrounding the intrusion will be relevant and important in determining the standard of care applicable to the landowner. When the intrusion is not foreseeable or is against the will of the landowner many intruders will be denied recovery as a matter of law. In other words, a landowner cannot be expected to maintain his premises in a safe condition for a wandering tramp or a person who enters against the known wishes of the landowner. Essentially the traditional tort test of foreseeability determines the liability or nonliability of the landowner in these cases. "If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could

anticipate, there is no negligence, and no liability." W. Prosser, Law of Torts §43 (4th ed. 1971).

Under the traditional rules, a jury must have been puzzled when told that the friend you invited into your home was not an invitee but the salesman who entered your home and sold you unwanted magazines was an invitee. Surely, a jury will have less trouble in applying a foreseeability of the risk standard in distinguishing the standard of care owed by a storekeeper to a customer from the standard owed the neighbor who takes a shortcut through your backyard and finally the burglar who climbs in your window. *See Gould v. DeBeve,* 330 F.2d 826 (D.C. Cir. 1964).

In the present case, the jury may properly consider the activity being carried on by the defendant and the foreseeability of children intruding and being injured in determining whether the defendant acted as a reasonably prudent person in the operation of his property. In our opinion, this provides the triers of fact with a simpler and more exact guideline than to require them to first label the status of the plaintiff and then apply the various standards applicable to the found status.

*Defendant's exception overruled; remanded.*

DUNCAN, J., concurred in the order; GRIMES, J., dissented; the others concurred.

DUNCAN, J., concurring in the order:
Without attempting to summarize a factual analysis of the several authorities cited, characterized, or relied upon by the majority of the court, it is sufficient to say that I cannot join in the conclusion that the law of this state will be advanced by abandonment of the traditional distinctions between trespassers, licensees, and invitees in favor of a general or loosely defined standard of "reasonable care under the circumstances."

Particularly pertinent to the case at bar is the comment in footnote 4 of Prosser on Torts § 62 (4th ed. 1971) where *Rowland v. Christian,* 69 Cal. 2d 108 (1968) and related cases are discussed: "One may question, for example, whether the rules as to trespassing children ... which were worked out over so many years with so much blood, sweat, toil, and tears will be jettisoned completely in favor of a free hand for the jury." There is too much of value in the restatement of the law with respect to trespassing children (Restatement (Second) of Torts § 339 (1965)), and owners of land

in general to warrant its abandonment particularly in instructing juries. *See Labore v. Company,* 101 N.H. 123, 135 A.2d 591 (1957); *Dorais v. Paquin,* 113 N.H. 187, 190, 304 A.2d 369, 372 (1973). The considerations set forth in the Restatement must be imparted to the jury if it is to be placed in a position to decide whether reasonable care was exercised by the landowner. Moreover, Prosser suggests that even under the decisions which the court now proposes to follow, the traditional categories are still to be considered "on the issue of what was reasonable care." W. Prosser, *supra* § 62.

The plaintiff's opening statement asserted that the children were present on the defendant's premises with express or implied permission, so that I have no hesitation in concurring in the order entered herein. I would do so even if the plaintiff conceded that the child was present without permission, since upon the facts stated at the trial, the case might be found upon appropriate evidence to be distinguishable from the *Labore* case *supra,* at least on the issue of the minor's appreciation of the risk. Accordingly I concur in the court's order.

GRIMES, J., dissenting: Although there may be less reason to maintain the distinction between social guests and business invitees than between trespassers and licensees or invitees, I see no reason to disturb our present law. My primary concern, however, is with the liability to trespassers.

Of the cases cited by the majority to support the elimination of distinctions involved in a landowner's liability, only six jurisdictions purport to eliminate the trespasser distinction. Of those jurisdictions, only one case actually involved injury to a trespasser. In *Rowland v. Christian,* 69 Cal. 2d 108, 443 P.2d 561, 70 Cal. Rptr. 97 (1968), a tenant's social guest was injured while using a faulty bathroom fixture. In *Pickard v. City and County of Honolulu,* 51 Hawaii 134, 452 P.2d 445 (1969), a licensee was injured when he unexpectedly fell through a hole in the floor in the restroom of the defendant's courthouse. In *Mile High Fence Company v. Radovich,* 28 Colo. App. 400, 474 P.2d 796 (1970), an on-duty police officer, characterized by the defendant as a licensee, was injured as he walked down an alley in the course of his work and stepped into an unprotected hole dug by the defendant. In *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S. App. D.C. 86, 469 F.2d 97 (1972), a building inspector was injured while examining the barbecue kitchen in the defendant's restaurant. In *Basso v. Miller,* 40

N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976), it appears from the extracts of the concurring opinion that a licensee was involved.

Because none of these cases specifically involved a trespasser, elimination of the trespasser distinction can only have been tangential to the actual legal principle as applied to the factual situation in each case and is mere dicta.

The remaining cases cited by the majority served only to abolish the traditional distinctions governing licensees and invitees, but retained the trespasser category. *Antoniewicz v. Reszcynski,* 236 N.W.2d 1 (Wisc. 1975); *Mounsey v. Ellard,* 297 N.E.2d 43 (Mass. 1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959). Even England's Occupiers' Liability Act of 1957 (5 and 6 Eliz. II, c. 31) which abolished the distinction between invitees, licensees and so-called contractual visitors did not make any change in the law as to the liability of an occupant of land to trespassers.

Solid support for the court's action is, therefore, reduced to a single case *(Mariorenzi v. Joseph Diponte, Ind.,* 333 A.2d 127 (R.I. (1975)) which has squarely faced the issue. In fact, the great majority of jurisdictions continue to retain the distinctions of liability based on the status of the injured party. The *Restatement* also retains the distinction. Restatement (Second) of Torts § 334 (1965).

I fear that the elimination of the trespasser distinction in the determination of the landowner's duty of care will result in unreasonable, unrealistic and unjust consequences. Every owner, lessee, and occupant of land will be faced with increased exposure to liability. If there are no good reasons for drawing a distinction between licensees and invitees, trespassers are in a fundamentally different position from those persons whom the landowner has expressly or by implication invited onto his property. *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639, 642 (1972). As was stated in *Mounsey v. Ellard,* 297 N.E.2d 43, 51-52 (Mass. 1973) at footnote 7, "We feel that there is significant difference in the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right — such as a licensee or invitee. For this reason, among others, we do not believe they should be placed in the same legal category. For example, one who jumps over a six-foot fence to make use of his neighbor's swimming pool in his absence does not logically belong in the

same legal classification as a licensee or invitee. Frankly, we are not persuaded as to the logic and reasoning in *Rowland v. Christian* . . . in placing trespassers in the same legal classification as a licensee or invitee." *See also Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S. App. D.C. 86, 469 P.2d 97, 108 (1972), Leventhal concurring.

I think it unwise to withdraw the court from its traditional role and leave a determination of what duty exists to the unbridled discretion of the jury. Elimination of the distinctions will result in the impotency of the court to control abuses by the jury. "If withdrawal of such guidelines expanded the discretion of juries on the one hand, it would limit pro tanto the power of the court to control abuses on the other, for want of yardsticks applicable to appropriate categories of situations. The citizen would be at a loss to learn factually just what the law demands of him as a landowner." *Beauchamp v. Los Gatos Golf Course,* 273 Cal. App. 2d 20, 26, 77 Cal. Rptr. 914, 919 (1969).

The court purports to reject the classification of "good" and "bad" trespassers and yet states that in some vague way it will be determined as a matter of law that certain trespassers will be denied recovery. If this is not the same thing then the difference escapes me.

One difficulty I have with the court's decision is that it casts aside a whole body of law, built up over the years, which clearly defines the rights and obligations of the property owner on the basis of the relationship he has with those who came upon his land. It is fundamental in tort law that the duty is created by the relationship. Under this law, the owner knows in advance what his duty is. In place of this well-settled and reasonable set of rules, the court now substitutes a single vague duty of reasonable care, under which the property owner acts at his peril with no standard by which he can judge his obligations in advance. The kinds of trespassers are many. The only thing they have in common is that they have no right on the land. And yet it is to be determined after the event what the owner's duty was before the event with regard to each of these various kinds of trespassers who enter upon his land.

Protesters who invade a company's property and are injured because of some condition of the premises will be able to have a jury decide after the event what duty the company owed to them. A burglar who is injured while scaling a fence in a high-crime area where burglars are not unexpected would be able to put the

owner to the risk of a jury decision on the question if he had used reasonable care toward the burglar. Such claims should of course be dismissed at the outset as they would be under our preexisting law.

In RSA 212:34 (Supp. 1975) the legislature has very recently shown its concern for protecting landowners from liability to trespassers. Today's decision seems to go contrary to the spirit of that statute.

My major disagreement with the court lies in its denigration of the importance of private ownership of property. I believe that the social and policy considerations which led to the trespasser distinction still apply. In a State which by its constitution recognizes the right of "acquiring, possessing and protecting property" (N.H. CONST. pt. I, art. 2), I submit that it is desirable that a person be able to use his property in his own way without the burden of watching for and protecting those who come upon his land without permission or right and against his will.