Merrimack
No. 99-592

WILLIAM MORSE, ADMINISTRATOR OF THE ESTATE OF SAMUEL T. MORSE

v.

RICHARD A. GODUTI

August 10, 2001

*Douglas, Robinson, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III*, and *V. Richards Ward, Jr.* on the brief, and *Mr. Douglas* orally), for the plaintiff.

*Nelson, Kinder, Mosseau & Saturley, P.C.*, of Manchester (*E. Tupper Kinder* and *Charles J. Keefe* on the brief, and *Mr. Kinder* orally), for the defendant.

BARRY, J., superior court justice, specially assigned under RSA 490:3. The plaintiff, William Morse, administrator of the Estate of Samuel T. Morse, appeals the Superior Court's (*T. Nadeau*, J.) grant of the motion of the defendant, Richard A. Goduti, for summary judgment. The court ruled as a matter of law that the defendant's erection of an artificial pond with deep slopes did not create an unreasonable risk of harm to the plaintiff's decedent, Samuel T. Morse, who drowned in the pond. We reverse and remand.

William and Linda Morse own property on Route 13 in Dunbarton. The defendant owns a contiguous parcel of land. Samuel Morse was a ten-year-old, developmentally disabled child who received special needs education.

The defendant's property included an in-ground swimming pool with a depth of six feet, completely enclosed by a fence. The Morse family was welcome to use the pool. Samuel was a frequent visitor to the defendant's property, coming over either to use the pool or simply say hello.

The defendant began construction of a pond in April 1990 for the purpose of preventing flooding and, according to his deposition testimony, "for fun and fish." He told Mr. Morse that the pond would have a drainage system so that it would never become very deep. Mr. Morse believed the pond would never exceed a depth of two or three feet.

April 6, 1996, was a spring day with a temperature in the forties. Upon his return from school, Samuel went outside to play with his dog and was subsequently missed by his parents. Later that day, Samuel's body was recovered from approximately six feet of water in the man-made pond after Mr. Morse discovered footprints in the snow around the pond.

The trial court was obligated to grant summary judgment if, after considering all the evidence presented in the light most favorable to the non-moving party, no genuine issue of material fact existed and the moving party was entitled to judgment as a matter of law. *See Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 300-01 (1992). In reviewing the superior court's grant of summary judgment, "we look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party." *Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537 (1997). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotations and brackets omitted). We review the trial court's application of the law to the facts *de novo*. *Id.*

To recover for negligence, the plaintiff must show that the defendant owed a duty to Samuel, the breach of which caused the injury for which the plaintiff now seeks to recover. *See Manchenton*, 135 N.H. at 304. The presence of a duty requires conformance to the standard of care appropriate under the circumstances. *See* 57A AM. JUR. 2D *Negligence* § 6 (1989).

In *Ouellette v. Blanchard*, 116 N.H. 552 (1976), we held that "owners and occupiers of land shall be governed by the test of reasonable care under all the circumstances in the maintenance and operation of their property." *Id.* Thereafter, foreseeability became dispositive as to the existence of liability or nonliability on the part of the landowner. *See id.*

"Ouellette did not purport to extinguish the court's function to determine whether the foreseeable risk and the relationship of the parties was such as to impose any duty of care at all upon the defendant for the plaintiff's benefit." *Paquette v. Joyce*, 117 N.H. 832, 837 (1977). In some cases, the court may deny the plaintiff recovery as a matter of law. *See id.* Notwithstanding, "[t]he court may declare whether or not the defendant was negligent only when the evidence is so clear that reasonable persons could arrive at but one conclusion." 57A AM. JUR. 2D *Negligence* § 25, at 85. Here, the evidence is not so clear that reasonable persons would necessarily arrive at the same conclusion.

The defendant would be entitled to summary judgment only if he "could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate." *Ouellette*, 116 N.H. at 557-58. "[R]easonable conduct under all the circumstances is the true test of due care." *Charbonneau v. MacRury*, 84 N.H. 501, 510 (1931). Even the defendant admits that he recognized a foreseeable risk of harm arising from the pond. For example, he testified during his deposition: "I was concerned for—there was a lot of water in our area and as I am with any child, I was concerned." The question then becomes whether the defendant's "conduct was reasonable in the light of what he could anticipate." *Ouellette*, 116 N.H. at 557-58.

■ Whether Samuel should have appreciated the risk is relevant to determining whether the defendant's conduct was reasonable, in other words, whether he took appropriate measures to reduce the risk to Samuel.

> [T]he fact that a dangerous condition is open to the perception of children . . . may not be enough . . . to

> assume that they will appreciate the full extent of the risk involved. . . . Children, through childish inattention, may fail to observe conditions which an adult might reasonably be expected to discover. Even if they know of the condition, there may be risks which it is not reasonable to assume that children will appreciate.

*Dunleavy v. Constant*, 106 N.H. 64, 67 (1964); *see also* RESTATE-MENT (SECOND) OF TORTS § 339 comment k at 203-04 (1965). Children "are entitled to be judged by standards commensurate with their age, experience, and wisdom." *Daniels v. Evans*, 107 N.H. 407, 408 (1966). Samuel was developmentally delayed, experienced difficulty focusing, exhibited problems paying attention, and was coded as mentally retarded by his school district. Presumably, the defendant was aware of Samuel's disabilities, as Samuel had visited the defendant's property since he was seven years old. Whether a child with Samuel's mental disabilities should have appreciated the risk associated with the pond, therefore, presents a question of fact. *See Dunleavy*, 106 N.H. at 68.

While Mr. Morse testified that Samuel probably needed less discipline than the average ten-year-old and was not the adventurous type, he also believed that his son was simply walking by the pond when he slipped and fell into the water. He further believed that Samuel could not get out because the banking was all ice, and his hands would have slipped off the banking. Mr. Morse was prepared to offer expert testimony that the slope of the pond would not allow someone who slipped on an icy path surrounding the pond to recover. The same expert opined in his report that "[t]he side slopes of the pond are steeply graded and pitch dangerously toward the center of the pond" and that "[t]he owner should have erected a fence or other suitable enclosure, either surrounding the property or pond area." A reasonable jury could find that it was unreasonable for the defendant not to have erected a fence or other suitable enclosure around the pond.

█ In his motion for summary judgment, the defendant argued that because Samuel's parents allowed him to play unsupervised and because both they and Samuel knew about the pond, the defendant should be permitted to assume that Samuel understood the danger of drowning that it presented. In this case, there is a question whether even Samuel's parents fully appreciated the extent of the risk the pond presented. In his deposition testimony, Mr. Morse

stated: "[The defendant] told me that there was a drainage system in the pond so that it would never get very deep, so I had no reason to think that it was, it was going to get more than a few feet deep." Reliance on the defendant's alleged representation, therefore, could have lulled Samuel's parents into a false sense of security that prevented their sufficiently warning Samuel about the danger of the pond. Thus, whether Samuel or his parents were able to fully appreciate the risk is a question for the trier of fact.

Finally, the defendant cites *Casper v. Chas. F. Smith*, 526 A.2d 87 (Md. 1985), for the proposition that the court should not distinguish between natural and man-made bodies of water in assessing liability. *See Casper*, 526 A.2d at 94 (stating all bodies of water deep enough to drown a child present foreseeable danger). The court in *Casper* declined to differentiate between natural bodies of water and artificially-deepened natural bodies of water. *Id.* at 94. To the extent that the defendant argues that Casper would apply here, we reject its holding and reaffirm our holding in *Ouellette v. Blanchard* that "owners and occupiers of land shall be governed by the test of reasonable care under all the circumstances in the maintenance and operation of their property." *Ouellette v. Blanchard*, 116 N.H. at 557. Whether the defendant's construction of a deep, steeply-sloped, man-made pond in a residential neighborhood presented a patent danger and, if so, whether he took reasonable precautions to prevent that danger, remain questions of fact for the jury to decide.

We therefore hold that the defendant was not entitled to summary judgment as a matter of law. Genuine issues of fact remained for the trier of fact to resolve. *See Manchenton*, 135 N.H. at 300-01. "In the present case, the jury may properly consider the activity being carried on by the defendant and the foreseeability of children intruding and being injured in determining whether the defendant acted as a reasonably prudent person in the operation of his property." *Ouellette*, 116 N.H. at 558. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

GRAY and MANIAS, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred.