Argued and submitted April 15, Summit High School, Bend, affirmed
August 14, 2002

## Joyce CONANT,
*Appellant,*

*v.*

## John STROUP
## and Lisa Stroup,
*Respondents.*

## 98CV0489ST; A112020
51 P3d 1263

Timothy J. Vanagas argued the cause and filed the briefs for appellant.

John A. Berge argued the cause for respondents. With him on the brief was Bryant, Lovlien & Jarvis, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Plaintiff initiated this action for negligence arising out of injuries that she suffered while jogging on defendants' property. The trial court entered a directed verdict on the ground that defendants are immune under ORS 105.682, which provides that private landowners are immune from liability for personal injuries that arise out of the use of their land for recreational purposes when the owner permits any member of the public to use the land for those purposes. Plaintiff appeals, assigning error both to the directed verdict and to the denial of her motion to amend. We affirm.

Defendants own a 50-acre parcel of real property near Redmond. The property is used primarily for growing crops. It is surrounded by a barbed-wire fence on all sides. An irrigation canal runs along the eastern boundary of the property; in fact, defendants' property extends to the middle of the canal itself. A dirt road parallels the canal on defendants' land. A gate permits access to the dirt road.

Plaintiff often jogged along the dirt road that parallels the canal. Other members of the public also used the road for jogging and cycling. On one occasion, while plaintiff was running along the dirt path, one of two dogs that had been roaming free on defendant's property bit her.

Plaintiff filed a complaint against defendants for negligence. She alleged that she had been jogging on defendants' property with their implied, if not their express, permission. In their answer, defendants alleged as affirmative defenses that they never gave plaintiff permission to enter their land and that she was a trespasser. In the alternative, they alleged that, if she had been permitted to use the property, then they are immune from liability under ORS 105.682.

At trial, plaintiff's theory was that she was not a trespasser and that, instead, she had used the dirt road for jogging for so many years that she was entitled to assume that she had implicit permission to continue doing so. At the same time, she contended that the public generally had not been permitted to use the road; only she—and perhaps a few other individuals—had been permitted to use the road.

At the close of plaintiff's case, defendants moved for a directed verdict under ORS 105.682. Defendants argued that, assuming that plaintiff was correct that she was permitted to use the road, they are entitled to immunity. Plaintiff opposed the motion on the ground that the statute applies only when individuals are permitted as members of the general public. In this case, she argued, the public was not permitted to use the road; only she and perhaps a few other joggers and cyclists were permitted to use it.

The trial court granted the motion. The court explained that "the statute which the defendants claim gives them protection seems to apply when any person is allowed to use the property for recreational purposes and does not seem to require that the land owners throw the property open to the general public for everyone's use." Plaintiff complained that the court's ruling would lead to the absurdity of providing immunity whenever a landowner invites a social guest. The trial court replied that "that's not what's going on here." According to the trial court:

> "The evidence [plaintiff] presented herself is that she jogged on that property for the better part of a decade, that at least during the period of time that [defendants] owned the property, she continued to jog on, on it. * * *

> "That she sees other people on the trail. * * * [T]here were no signs indicating that entry was unwelcome or prohibited. This is a fifty-acre tract of land, not somebody's back yard on a 50 by 100 [foot] lot. And certainly, [plaintiff] is a member of the general public when she uses [defendants'] property for a jogging trail."

Plaintiff then moved to amend her complaint to allege a willful injury. The trial court denied the motion.

■ On appeal, plaintiff first assigns error to the entry of the directed verdict for defendants. Her principal contention is that ORS 105.682 does not apply because defendants' land was not "open to the public" and she was not permitted to use the road as a member of the general public. Defendants argue that the trial court correctly concluded that the statute applies to *any* person who is permitted to use private property for recreational purposes.

■    In determining the scope of the immunity conferred by ORS 105.682, we are guided by the method described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Our goal is to ascertain what the legislature intended, looking first to the text in its context and, if necessary, also to legislative history and other aids to construction. *Id.* at 610-12. We begin with the question whether ORS 105.682 applies only when private land is opened *to the general public* for recreational use.

ORS 105.676 declares that

> "it is the public policy of the State of Oregon to encourage owners of land *to make their land available to the public* for recreational purposes, for woodcutting and for the harvest of special forest products by limiting their liability toward persons entering thereon for such purposes and by protecting their interests in their land from the extinguishment of any such interest or acquisition by the public of any right to use or continue the use of such land for recreational purposes, woodcutting or the harvest of special forest products."

(Emphasis added.) To give effect to that policy, ORS 105.682 provides, in part:

> "[A]n owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, woodcutting or the harvest of special forest products when the owner of land either directly or indirectly permits any person to use the land for recreational purposes, woodcutting or the harvest of special forest products."

The statute thus provides immunity for an owner of property who "either directly or indirectly permits any person to use the land for recreational purposes." In isolation, the phrase "any person" certainly is broad and unqualified. But the term "any" often carries with it limitations implicit from its context. As *Black's Law Dictionary*, 94 (6th ed 1990) explains, the word

> "has a diversity of meaning and may be employed to indicate 'all' or 'every' as well as 'some' or 'one' and its meaning in a given statute depends upon the context and the subject matter of the statute."

*See also* Bryan A. Garner, *A Dictionary of Modern Legal Usage*, 65 (2d ed 2001) ("[a]ny is greatly overworked in statutes"). ORCP 68 B, for example, provides that "[i]n any action, costs and disbursements shall be allowed[.]" Clearly, it does not mean literally *any* action. Rather, from the context, it may be seen that the term refers to any action filed in an Oregon circuit court and to which the Oregon Rules of Civil Procedure apply. ORCP 1 A. The question in this case is whether the legislature intended the reference to "any person" in ORS 105.682 to refer literally to any single person or to any person as a member of a limited universe of persons to which the statute applies. For the following reasons, we conclude that the legislature most likely intended the latter reading of the statute.

■■ First, we must read ORS 105.682 in a manner that gives effect to its purpose. That purpose finds expression in ORS 105.676, which provides that the statute is intended "to encourage owners of land to make their land available *to the public* for recreational purposes." (Emphasis added.) The term "public" ordinarily refers to

"**1:** a place accessible or visible to all members of the community * * * **2a:** an organized body of people * * * **b:** the people as a whole * * * [or] **3:** a group of people distinguished by common interests or characteristics[.]"

*Webster's Third New Int'l Dictionary*, 1836 (unabridged ed 1993); *see also Black's* at 1227 (defining "public" as either "the people at large" or enough people "as contradistinguishes them from a few"). That is the manner in which the legislature commonly uses the term. *See, e.g.*, ORS 105.755 (a "public" road is "a road used by the general public"); ORS 161.015(10) (a "public" place is "a place to which the general public has access"); ORS 164.805(2) (a "public" way includes roads, streets, and other facilities operated "for the use by the general public"); ORS 167.060(8) (a "public" thoroughfare is one "designed for use, enjoyment or transportation of the general public"). Thus, a single person may be a member of the public, but, at least in the ordinary sense of the term, a single person is not "the public." The purpose of the statute is thus plain. If private landowners will make their lands available *to the general public* for recreational purposes, the state

will "trade" that public access for immunity from liability that might result from the use of the property. *See Brewer v. Dept. of Fish and Wildlife*, 167 Or App 173, 190, 2 P3d 418 (2000), *rev pending* (2002) (ORS 105.682 reflects a trade: "by permitting recreational landowners to limit their liability *in the event that they choose to open their lands to the public* for recreational purposes without charge") (emphasis added). In light of that purpose, it seems likely to us that the legislature intended the immunity to apply only when permission is granted to a person as a member of the public generally, not as a specific invitee.

Second, other provisions of the same statute suggest the same reading. ORS 105.692(2), for example, provides, in part:

> "The fact that an owner of land allows *the public* to use the land for recreational purposes * * * does not raise a presumption that the landowner intended to dedicate or otherwise give over to the public the right to continued use of the land."

(Emphasis added.) The phrasing of the statute clearly suggests that the legislature contemplated that the sort of permission that triggers statutory immunity is permission to the public to use private land for recreational purposes.

Similarly, under ORS 105.692(3), "[n]othing in this section shall be construed to diminish or divert any *public* right to use land for recreational purposes" that has been acquired by dedication, prescription, or the like. (Emphasis added.) In the same vein, ORS 105.692(4) provides that "[n]othing in this section shall be construed to diminish or divert any *public* right to use land for woodcutting" that has been acquired by dedication, prescription, or the like. (Emphasis added.)

Third, the disputed statutory language was taken from a model act, which has been interpreted uniformly by other jurisdictions to apply only when landowners permit members of the public generally to use private property for recreational purposes. *See, e.g., GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 124, 914 P2d 682 (1996) (decisions of other state courts are "context" for construction

of Uniform Commercial Code); *Betschart v. Spinden*, 172 Or App 668, 673, 20 P3d 202, *rev den* 332 Or 326 (2001) (decisions of other state courts considered context for Uniform Criminal Extradition Act).

The statute traces its origin to a model act proposed by the Council of State Governments, which, in turn, was derived from a Wisconsin statute enacted in 1963. Certain Wisconsin foresters were concerned about the destruction of trees by deer. They wished to permit hunters to hunt on their lands, but they feared potential liability that might occur as a result of doing so. To address that problem, they persuaded the Wisconsin legislature to enact a statute that limited their potential liability. *See generally* Note, *Liability of Landowner to Persons Entering for Recreational Purposes*, 1964 Wis L Rev 705, 709.

The idea quickly attracted the attention of the Committee of State Officials on Suggested State Legislation of the Council of State Governments, which drafted a model act. The council explained the purpose of the model act in the following terms:

> "Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreation resources available. Where the owners of private land suitable for recreational use make it available on a business basis, there may be little reason to treat such owners and the facilities they provide in any way different from that customary for operators of private enterprises. However, *in those instances where private owners are willing to make their land available to members of the general public* without charge, it is possible to argue that every reasonable encouragement should be given to them."

Committee of State Officials on Suggested State Legislation, XXIV Suggested State Legislation, 150 (1965) (emphasis added). Accordingly, the model act contained a purpose section, which stated:

> "The purpose of this act is to encourage owners of land to make land and water areas *available to the public* for recreational purposes by limiting their liability toward persons entering thereon for such purposes."

*Id.* (emphasis added). The model act went on to declare that, subject to limited exceptions, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes." *Id.* at 151. It further declared that "an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes" does not, among other things, thereby assume responsibility for any injuries that occur on the land. *Id.*

In 1971, the Oregon Legislature adopted the model act almost verbatim, as did more than three dozen other states. That language remained substantially unchanged until 1995, when the Oregon Legislature enacted a number of amendments to the statute, none of which is pertinent to this case.

■ Meanwhile, a number of states began to grapple with a basic drafting problem posed by the wording of the model act. On the one hand, the model act expressed a basic *quid pro quo* in its declaration of policy, namely, permission *to the general public* to use private land for recreational purposes in exchange for immunity from liability for resulting injuries. On the other hand, the model act referred to the immunity as applying when a landowner granted permission to "any person," without a qualification that the person must be a member of the general public to whom permission had been granted. The problem, of course, was that, if read literally and in isolation, the immunity provisions effectively would nullify the law of premises liability as it pertains to invitees: Any time an individual is invited to use an owner's back yard for croquet, immunity would apply.[1]

---

[1] Under traditional rules of landowner liability, the duties that an owner owes to persons who come onto the land depend on whether the person is an invitee, licensee, or trespasser. The owner owes the greatest duties to the invitee, including the duty to warn of latent dangers and the duty to take affirmative steps to make the premises safe for invitees. *See generally Restatement (Second) of Torts* § 343 (1965). Oregon adheres to the traditional rules. *Walsh v. C & K Market, Inc.,* 171 Or App 536, 539, 16 P3d 1179 (2000).

The response of the state courts who addressed the problem has been uniform. Courts have construed the model act to effectuate its purpose by concluding that permission to "any person" refers to any person *as a member of the general public* to use private property for recreational purposes. The Utah Supreme Court's decision in *Perrine v. Kennecott Mining Corp.*, 911 P2d 1290 (Utah 1996), is representative. In that case, the owner of a 30-acre parcel leased the property to a rodeo club. The club did not permit members of the general public to use the property and, in fact, posted "no trespassing" signs. One of the club members, however, extended a social invitation to two guests to go horseback riding on the property. One of the guests was injured and sued the club and the owner, both of whom invoked the immunity provisions of the Utah Landowner Liability Act, based on the model act. The court began by observing that the stated purpose of the act is to make land available "to the public." *Id.* at 1292. The ordinary meaning of the term "public," the court noted, is " '[o]pen to all; * * * open to common use * * * not limited or restricted to any particular class of the community.' " *Id.* (quoting *Black's Law Dictionary*, 1393 (4th ed 1951)). To effectuate the purpose of the act, the court concluded, its provisions must be limited to circumstances in which an owner makes land "open to all" and "not restricted to any particular class in the community." *Perrine*, 911 P2d at 1293 (quotation marks omitted). The court explained that any other construction of the statute was not likely what the legislature intended:

> "If the plain meaning of the Landowner Liability Act was ignored and landowners who opened their land to only selected members of the public could nevertheless qualify for immunity, the result would be nonsensical and contrary to the Act's stated purpose. For example, operation of the Act under the proposed interpretation would immunize even homeowners from the negligence claims of social guests invited for recreational purposes."

*Id.*

Other courts have reached the same result by the same reasoning. *See, e.g., Mozier v. Parsons*, 852 F Supp 925, 932 (D Kan 1994), *aff'd on other grounds* 874 F Supp 329 (D Kan 1995) (applying Kansas law) ("a landowner receives the

protection of the statute only by permitting free use of the land and facilities by the general public"); *Gibson v. Keith*, 492 A2d 241, 244 (Del 1985) (recreational use statute "may only be invoked to limit the liability of real property owners 'who directly or indirectly invite or permit without charge' the public at large to use their property for recreational purposes"); *Snyder v. Olmstead*, 261 Ill App 3d 986, 991, 634 NE2d 756, 761, *rev den* 157 Ill 2d 523, 642 NE2d 1304 (1994) ("We believe that the purpose of the Recreational Use Act would not be advanced by applying the Act to a situation where an owner does not open his property to the public, but simply invites a few private persons to a picnic."); *Loyer v. Buchholz*, 38 Ohio St 3d 65, 66-67, 526 NE2d 300, 302 (1988) ("Since the purpose of the legislation conferring immunity is to encourage owners of premises suitable for recreational pursuits to open their lands for public use, it follows that where the land in question is not held open to the public, the immunity does not apply."); *LePoidevin by Dye v. Wilson*, 111 Wis 2d 116, 131, 330 NW2d 555, 563 (1983) (immunity limited to invitations to the general public because "we do not presume that the legislature intended * * * to work a wholesale change in the entire law relating to the obligations of all landowners to all entrants to the land, including social guests invited to the premises for recreational purposes").

The only cases in which courts have construed recreational use statutes to provide immunity without an invitation to the general public involve statutes that are not based on the wording of the model act. *See, e.g., Collins v. Martella*, 17 F3d 1, 4 (1st Cir 1994) ("Unlike similar statutes in other jurisdictions and the model recreational use statute proposed by the Council of State Governments, the New Hampshire recreational use statutes do not contain any language suggesting a requirement that the land at issue must be * * * open to the general public.").

We find persuasive the decisions of other courts that hold that the immunity created by the model act is limited to cases in which permission is given to the general public to use private land for recreational purposes. The reasoning of those courts has been that only such a construction of the act keeps faith with the stated purpose of making private land available *to the public* for recreational purposes while, at the same

time, avoids the inadvertent evisceration of common-law doctrines concerning the duties of landowners to invitees. The purpose of the Oregon statute is clearly stated. And nothing in its wording suggests that the legislature intended broadly to sweep away the ordinary duties of landowners towards invitees in cases not involving the use of their land by the public generally. Accordingly, we conclude that ORS 105.682 applies only when private landowners permit the public to use their land for recreational purposes.

The question remains whether the trial court correctly concluded that the evidence, taken in the light most favorable to plaintiff, shows that plaintiff was permitted as a member of the general public to use the dirt road for recreational purposes. *Shockey v. City of Portland*, 313 Or 414, 422, 837 P2d 505 (1992), *cert den* 507 US 1017, 113 S Ct 1813 (1993). Plaintiff argues that the trial court ignored evidence that defendants had posted "no trespassing" signs on the road to prevent its use by members of the public.

We accept for the sake of argument that the existence of such signs would be a relevant fact in determining whether plaintiff was permitted as a member of the public to use defendants' road. We nevertheless are unable to locate any evidence in the record suggesting that the trial court was incorrect in finding that no such signs had been posted on the date of plaintiff's injury. Plaintiff cites two references in the transcript, but neither establishes that a sign was posted on that date. In the first, one of the defendants testified that she did *not* post such signs. In the other, she testified that a neighbor had requested permission to post a sign to ward off hunters. But there is no evidence that such a sign was posted before the date of plaintiff's injury. To the contrary, as the trial court noted, plaintiff herself and several of her witnesses uniformly insisted that there were no signs posted by the road on the date of the injury or at any other time.[2]

Plaintiff argues that, even so, the trial court still erred in granting the motion for a directed verdict, because

---

[2] We do not hold that the lack of "no trespassing" signs *necessarily* means that defendants granted permission to the public to use their land. We address only plaintiff's argument that the supposed presence of "no trespassing" signs necessarily means that the public was not granted permission.

the injury did not "arise[ ] out of the use of the land," as the statute requires. According to plaintiff, for ORS 105.682 to apply, the "mechanism" of the injury must be the land itself. Defendants argue that such a requirement simply cannot be supported by the wording of the statute.

We agree with defendants. The statute does not require that the "mechanism" of the injury be the land itself. It requires only that the injury "arise[ ] out of the use of the land." In this case, the evidence is undisputed that the injury arose out of plaintiff's use of defendants' land for recreational purposes. We reject plaintiff's argument without further discussion.

■ Plaintiff also assigns error to the denial of her motion to amend her complaint after the entry of the directed verdict. We review that decision for an abuse of discretion. *Adams v. Knoth*, 102 Or App 238, 246, 794 P2d 796, *rev den* 310 Or 422 (1990). After reviewing the record, we conclude that the trial court did not abuse its discretion.

Affirmed.