Argued and submitted December 6, affirmed December 29, 2004

## Jean WAGGONER,
*Appellant,*

*v.*

## CITY OF WOODBURN,
*Respondent.*

## 03C-10020; A123133

103 P3d 648

J. Michael Alexander argued the cause and filed the briefs for appellant. With him on the briefs was Swanson, Lathen, Alexander & McCann, PC.

Bruce Mowrey argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff was injured while using a swing at a public park. She initiated this action for negligence against defendant, the owner of the park. Defendant obtained summary judgment dismissing the claim on the ground that defendant is entitled to immunity under the state's recreational use statute, ORS 105.682. Plaintiff appeals, arguing that the immunity that the statute affords should apply only to undeveloped, rural land in its natural state, not to public parks. Defendant relies on the wording of the statute, which provides for immunity when an injury arises out of the use of "all public and private lands" to which the public has been invited for recreational use. ORS 105.688(1)(a). We agree with defendant and affirm.

The relevant facts are not in dispute. Defendant is a municipality that owns and maintains Burlingham Park, a public park. Plaintiff was using a swing set at the park when it broke, dropping plaintiff to the ground and causing her injury. Her complaint alleged that her injuries were the result of defendant's negligence in failing to properly inspect and maintain the swing set and in failing to provide a safe landing area below the swing set. Defendant answered, asserting as an affirmative defense that it is entitled to immunity under ORS 105.682, which provides:

> "[A]n owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes * * * when the owner of land either directly or indirectly permits any person to use the land for recreational purposes[.]"

Defendant then moved for summary judgment on the basis of ORS 105.682. Plaintiff filed a motion for partial summary judgment, arguing that, on the undisputed facts, the immunity afforded by that statute is not available in this case. The trial court granted defendant's motion, denied plaintiff's motion, and dismissed the complaint.

On appeal, plaintiff argues that the trial court erred in granting defendant's motion and in denying her motion. According to plaintiff, ORS 105.682 applies only "to undeveloped land, land in its natural state, and/or land not otherwise

intended principally for recreational use." Plaintiff acknowledges that the phrasing of the statute does not—at least not expressly—say that. She complains, however, that defendant and the trial court "overfocuse[d] on the provisions of the current statute, and its particular language." Defendant responds that the wording of the statute is indeed controlling and that that ends the matter.

■　　The parties' arguments require us to determine the intended meaning of ORS 105.682. That, in turn, requires us to apply the interpretive method described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993); that is, we examine "first and foremost" the text in context and, if necessary, legislative history and other aids to construction. *State v. Harris*, 157 Or App 119, 123, 967 P2d 909 (1998).

We begin with the text in context. ORS 105.676 declares that "it is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes * * * by limiting their liability toward persons entering thereon for such purposes." To effectuate that policy, ORS 105.682 establishes, as we have noted, immunity from tort liability for "any personal injury * * * that arises out of the use of the land for recreational purposes * * * when the owner of [the] land * * * permits any person to use the land for recreational purposes." As we noted in *Conant v. Stroup*, 183 Or App 270, 275-76, 51 P3d 1263 (2002), *rev dismissed*, 336 Or 126 (2003), the purpose of the statute is plain enough: If landowners "will make their lands available to the general public for recreational purposes, the state will 'trade' that public access for immunity from liability that might result from the use of the property."[1] (Emphasis omitted.) *See also Brewer v. Dept. of Fish and Wildlife*, 167 Or App 173, 190, 2 P3d 418 (2000), *rev den*, 334 Or 693 (2002)

---

[1] In *Conant*, we referred a number of times to the statute's application to "private" landowners who make their land available for public recreational use. *See, e.g.*, 183 Or App at 275 ("If private landowners make their land available to the general public * * *."). That is because only private property was involved in that case. The opinions should not be read to suggest that statutory immunity is not available to owners of public property. ORS 105.672(3) makes clear that the statute applies to "all real property, whether publicly or privately owned," as long as the other conditions for immunity are satisfied.

(purpose of statute is to "permit[ ] recreational landowners to limit their liability in the event that they choose to open their lands to the public for recreational purposes without charge"). That much is uncontested. What is contested is precisely who is entitled to make such a "trade" and under what circumstances.

An "owner" means "the possessor of any interest in any land, including but not limited to possession of a fee title." ORS 105.672(4). "Land" refers to "all real property, whether publicly or privately owned." ORS 105.672(3). "Recreational purposes" include, but are not limited to,

"outdoor activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, nature study, outdoor educational activities, water skiing, winter sports, viewing or enjoying historical, archeological, scenic or scientific sites or volunteering for any public purpose project."

ORS 105.672(5).

The applicability of the statutory immunity is further described in ORS 105.688, which provides, in part, that, subject to exceptions not pertinent to this case,

"the immunities provided by ORS 105.682 apply to:

"(a)   All public and private lands, including but not limited to lands adjacent to or contiguous to any bodies of water, watercourses or the ocean shore * * *;

"(b)   All roads, bodies of water, watercourses, rights of way, buildings, fixtures and structures on the lands described in paragraph (a) of this subsection; and

"(c)   All machinery or equipment on the lands described in paragraph (a) of this subsection."

In this case, the undisputed evidence shows that defendant is the "owner" of Burlingham Park, which is "land" within the meaning of the statute. The undisputed evidence also shows that defendant permits members of the public to use the park for "recreational purposes." Burlingham Park is, indeed, specifically designed for public recreation. Plaintiff's injury arose out of her use of Burlingham Park for recreational purposes. It necessarily follows that, under ORS 105.682, defendant is immune from liability for that injury.

Plaintiff insists that the statute does not apply to land such as Burlingham Park precisely because it is "intended principally for recreational use." According to plaintiff, the legislature intended that ORS 105.682 apply only to property that is rural and undeveloped, not to urban parks. Plaintiff arrives at that conclusion based on her reading of the definition of the recreational activities that trigger the statute's applicability. She reasons that, because all of the activities necessarily involve the use of rural, undeveloped land, it is apparent that the legislature intended immunity to apply only to the recreational use of rural land.

The problem with that argument lies with its premise, namely, that all of the activities listed in the statutory definition of "recreational purposes" necessarily involve the use of rural, undeveloped land. Among other things, the statute lists "swimming, boating, * * * picnicking, hiking, nature study, outdoor educational activities, * * * viewing or enjoying historical, archeological, scenic, or scientific sites or volunteering for any public purpose project," ORS 105.672(5), all of which activities commonly may be accomplished in urban parks.[2]

Plaintiff also contends that a legislative intention to limit immunity to owners of rural, undeveloped property may be inferred from what the statute does *not* say: "[E]xamination [of] text and context reveals no intent to extend immunity to city parks developed specifically for recreational purposes." In other words, plaintiff argues that, because the statute does not specifically mention city parks, we should conclude that the legislature did not intend the statute to apply to city parks. Similarly, plaintiff examines the legislative history and, finding "no mention of relieving municipalities from liability for negligence for playground

---

[2] Aside from that, plaintiff does not suggest—and we are certainly unaware of—a way to distinguish so-called "rural" from "urban" parks, at least not in any way that is anything but arbitrary. The ordinary meaning of the word "rural" is "of, relating to, associated with, or typical of the country," *Webster's Third New Int'l Dictionary* 1990 (unabridged ed 2002), while the ordinary meaning of "urban" is "of, relating to, characteristic of, or taking place in a city," *id.* at 2520. The differences between the two may not always be obvious. The boundaries of a city may extend to areas that are otherwise quite "rural." Indeed, Portland's Forest Park consists of 5,000 wooded acres of almost completely undeveloped land that lies within a stone's throw of downtown.

injuries," argues that "[t]he statutes should not be so extended."

We find plaintiff's argument unpersuasive. As we have noted on a number of occasions, arguments based on what the legislature did *not* say, either in the text of a statute or in its legislative history, are always tricky. *State v. Young*, 196 Or App 708, 713, 103 P3d 1180 (2004) ("The committee's silence is notable only if what it *did* say purported to be a complete statement of its intentions.") (Emphasis in original.); *Kerr v. Bradbury*, 193 Or App 304, 323, 89 P3d 1227, *rev allowed*, 337 Or 282 (2004) (reasoning from silence "is at best risky and, at worst, illogical"). In this case, for example, the legislature could have said nothing specifically about municipal parks because it enacted language broad enough to make such specificity unnecessary.

That certainly seems to be the case here, where the legislature enacted a statute that affords immunity to "the possessor of any interest in any land," ORS 105.672(4)—including "all real property, whether publicly or privately owned," ORS 105.672(3)—if that land is opened to the public for recreational use. ORS 105.682. The legislature actually repeated the point, emphasizing in ORS 105.688 that "the immunities provided by ORS 105.682 apply to * * * [a]ll public and private lands." If the statutes mean what they say, there would be no reason for the legislature to spell out more specifically that "all real property, whether publicly or privately owned" that is opened for public recreational use includes municipal parks.

Moreover, plaintiff's argument by negative inference cuts both ways. It also could be argued that the legislature's silence about exempting municipal parks suggests that it intended ORS 105.682 to apply to them. And, indeed, given the broad and inclusive phrasing of the statute—and our obligation to refrain from inserting words that the legislature omitted, ORS 174.010—that is more likely what the legislature intended.

The legislature's intentions in that regard may be confirmed by reference to the changes in the wording of the statute over the years. *See Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) ("In a serially amended statute * * * the

wording changes adopted from session to session are a part of the context of the present version of the statute being construed."). The statute originated in 1971, when the legislature adopted the phrasing of a model landowner liability act. *See Conant*, 183 Or App at 276-78 (tracing history of statute). As originally phrased, it defined "land" to mean "agricultural land, forest land, and lands adjacent or contiguous to the ocean shore[.]" Or Laws 1971, ch 780, § 1(2).[3] In 1995, the legislature amended the definition of "land" to take the form in which it now appears; that is, it includes not just agricultural, forest, and oceanfront land but *"all* real property, whether publicly or privately owned." Or Laws 1995, ch 456, § 1(3) (emphasis added).[4] In that light, it becomes clear that plaintiff's proposed construction robs the 1995 amendments of any significance. Instead, her suggestion that the statute applies only to undeveloped, rural land essentially freezes the applicability of the statute in its pre-1995 state.

■     Plaintiff also refers to decisions of courts in other jurisdictions, some of which hold that similarly phrased immunity statutes apply only to rural property. It is true that, when this state adopts a model act, preexisting decisions of other states may be considered as part of the statute's context. *See, e.g.*, *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 124, 914 P2d 682 (1996) (decisions of other state courts are "context" for construction of Uniform Commercial Code). When there is nothing close to unanimity among those decisions, however, it is not clear to us how any

---

[3] To be sure, the legislative history of the 1971 enactment reflects much discussion of the use of rural, undeveloped land for public recreational purposes. Given the fact that the wording of the statute limited immunity to agricultural, forest, and ocean shore land, however, that history is not surprising. In any event, the question before us is not the meaning of the original 1971 enactment, but the meaning of the statute as amended in 1995.

[4] There appears to be little discussion in the legislative history of the 1995 amendments of the expansion of the statute to apply to public land. There are only repeated references in, for example, staff summaries that the purpose of the bill is "expanding this immunity" so that more owners of land will open their lands to public recreation. Interestingly, there is discussion in the legislative history about the applicability of the law to municipal ports—the Port of Portland, in fact, testified in support of the amendments—which would seem to suggest that plaintiff errs in arguing that the legislature intended the expanded version of the act to apply only to rural, undeveloped property. Minutes, House Committee on Natural Resources, Subcommittee on Agriculture and Forestry, HB 2296, Jan 30, 1995, 4.

particular line of cases can be indicative of the Oregon legislature's intentions.

That certainly is the case as to the scope of recreational use immunity statutes, which one court has aptly described as "a tortured tapestry of decisional law." *Redinger v. Clapper's Tree Service Inc.*, 419 Pa Super 487, 615 A2d 743, 746 (1992), *app den*, 624 A2d 111 (1993). Some courts have, indeed, concluded that immunity may be claimed only by owners of undeveloped, rural property. *E.g.*, *DeBaritault v. Salt Lake City Corp.*, 913 P2d 743, 748 (Utah 1996) (municipality is not immune from liability for injuries sustained at city park). Others have concluded that drawing a distinction between urban and rural recreational property finds no support in the wording of the statute and, in any event, is "arbitrary" and unworkable. *Syrowik v. City of Detroit*, 119 Mich App 343, 326 NW2d 507, 509 (1982); *see also Neal v. Wilkes*, 470 Mich 661, 685 NW 2d 648, 651 (2004) (recreational use immunity statute "makes no distinction between * * * undeveloped land and developed land * * * urban or suburban land and rural land," to do so would usurp legislative function); *Ravenscroft v. Washington Water Power*, 136 Wash 2d 911, 921, 969 P2d 75 (1998) (recreational use immunity statute applicable to both artificial and natural bodies of water and tracts of land); *Seich v. Town of Canton*, 426 Mass 84, 686 NE 2d 981, 983 n 5 (1997) (indoor gymnasium subject to recreational use immunity statute).

Some of the decisions are based on "policy implications" and the courts' attempts to conform to a perceived "trend in recent years to do away with immunities from suit which are neither constitutionally [n]or statutorily compelled." *E.g.*, *Rivera v. Philadelphia Theological Seminary*, 510 Pa 1, 507 A2d 1, 7, 7 n 15 (1986) (holding that immunity does not extend to owner of public indoor swimming pool). Others are based on different policy considerations, in particular that the statute "should be given a liberal construction to carry out the Legislature's intent to further recreational activities" in the state. *E.g.*, *Syrowik*, 326 NW2d 509-10 (city is immune from liability for injuries sustained during recreational use of public park).

Still other decisions are based on the courts' understanding that the purpose of the statutes was to open rural, undeveloped land to public recreation. *E.g.*, *Harrison v. Middlesex Water Co.*, 80 NJ 391, 403 A2d 910, 913-14 (1979) (no immunity for owner of municipal reservoir). And still others are based on a reading of the "plain language" of the statutes, which draws no distinction between urban and rural property. *E.g.*, *Palmer v. U.S.*, 945 F2d 1134, 1136 (9th Cir 1991) ("We see nothing in the language of Hawaii's statute that makes a distinction between urban and rural properties. If the legislature wished to deprive urban property holders of qualified immunity, it could have easily done so. It is not our role as a court to rewrite the plain language of a state statute.").

Such divergent decisions—even assuming for the sake of argument that the Oregon legislature was aware of them—offer nothing useful to our attempt to ascertain what the legislature likely intended ORS 105.682 to mean. We are left with the statute's phrasing and the other ordinary tools of construction, which lead us to conclude that the Oregon legislature meant what it said in stating that "*all* real property, whether publicly or privately owned," ORS 105.672(3) (emphasis added), that is opened to the public for recreational use is subject to the immunity described in ORS 105.682. The statute includes no exception for land that is not "rural, undeveloped land," and, regardless of our thoughts about the wisdom of that state of affairs, it is not our province to alter the wording of the law. ORS 174.010.

■ Finally, plaintiff argues that, even if ORS 105.682 applies to public parks, it does so only when a member of the public is injured when using the parks for "recreational purposes." Plaintiff argues that, in this case, the injuries that she suffered when falling from a swing set did not arise out of using the park for a "recreational purpose." Invoking the interpretive maxim *ejusdem generis*, she argues that swinging on a swing set is not the sort of recreational activity that is listed in ORS 105.672(5), which she argues should be limited to "vigorous recreation conducted in rural settings."

■ As we noted in *State v. Mayorga*, 186 Or App 175, 182-83, 62 P3d 818 (2003), the maxim of *ejusdem generis*

must be applied with "[c]aution" because of, among other things, its nearly limitless malleability. According to the traditional application of the rule, when a statute enumerates a set of specifics but leaves the list open-ended, either implicitly or explicitly by the use a of more general phrase, the scope of the statute must be limited by reference to the common quality or characteristic that is reflected by the set of specifics. *Id.* The problem is that there may be any number of plausible qualities or characteristics that a given set of specifics have in common. *See id.* at 182 n 4 ("The trick, of course, is in describing the common quality or characteristic. In many cases, any number of possibilities are plausible.").

At the very least, the scope of the statute will be limited by a quality or characteristic that the specifics have in common. *Bellikka v. Green*, 306 Or 630, 636, 762 P2d 997 (1988). In this case, plaintiff's argument founders on that requirement. She asserts that the statute should be read to apply to "vigorous recreation conducted in rural settings." As we have already observed, however, not all the activities enumerated in ORS 105.672(5) are necessarily conducted in rural settings. Aside from that, not all the activities enumerated in that statute are "vigorous," at least not in the ordinary sense of the word. *See Webster's* at 2551 (defining "vigor" as "active strength or force of body or mind * * * intensity of action or effect"). The statute, for example, includes in its list of "recreational purposes" such activities as "picnicking," "outdoor educational activities," and "viewing or enjoying historical, archeological, scenic or scientific sites or volunteering for any public purpose project." ORS 105.672(5). Certainly, playing on playground equipment is no less "vigorous" than those activities described by the statute.

We conclude that the trial court was correct in determining that, on the undisputed facts before it, plaintiff's claim was subject to ORS 105.682. The court therefore did not err in entering summary judgment in favor of defendant.

Affirmed.