Rockingham
No. 2004-566

ESTATE OF JAYCOB GORDON-COUTURE

v.

GEORGE BROWN & a.

Argued: February 9, 2005
Opinion Issued: May 23, 2005

*Soltani/Mosca P.L.L.C.*, of Epsom (*Edward C. Mosca* on the brief and orally), for the plaintiff.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert G. Whaland* on the brief and orally), for the defendants.

DUGGAN, J. This case arises out of the accidental drowning of two-year-old Jaycob Gordon-Couture while attending a birthday party at property owned by the defendants, George and Silvia Brown. The plaintiff, the estate of Jaycob Gordon-Couture, appeals an order of the Superior Court (*Perkins*, J.) granting the defendants' motion for summary judgment. On appeal, the plaintiff argues that the trial court erred in ruling that the defendants were immune from liability under two recreational use statutes, RSA 212:34 (Supp. 2004) and RSA 508:14, I (1997). We reverse and remand.

The trial court found the following facts. On August 17, 2002, the defendants' daughter held a birthday party for her son at the defendants' property on Half Moon Pond in Kingston. Elizabeth McNeil attended the party and brought her boyfriend's son, Jaycob, with her. McNeil and Jaycob spent some time playing in the water and then returned to the beach. At some point after returning to the beach, McNeil realized that

Jaycob was missing. After a search of the area, Jaycob's body was found in the pond. Later, at the hospital, he was pronounced dead due to drowning.

The plaintiff brought suit alleging that the defendants negligently failed "to keep the beach and dock area safe for their guests including providing the proper supervision or, alternatively, placing appropriate limitations upon the use of the beach and dock area." The trial court granted the defendants' motion for summary judgment, ruling that the defendants were not liable under the recreational use statutes, RSA 212:34 and RSA 508:14, I. This appeal followed.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Estate of Joshua T. v. State*, 150 N.H. 405, 407 (2003). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.*

On appeal, the plaintiff argues that the trial court erred in ruling that the defendants are immune from suit under two recreational use statutes, RSA 212:34 and RSA 508:14, I. Specifically, the plaintiff argues that the recreational use statutes do not apply to private land used for private activities. Rather, the plaintiff argues that the statutes only apply to private land that is open to the general public. We agree.

The question before us is one of statutory interpretation. We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *In the Matter of Jacobson & Tierney*, 150 N.H. 513, 515 (2004). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* When statutory language is ambiguous, we examine the statute's overall objective and presume that the legislature would not pass an act that would lead to an absurd or illogical result. *Marceau v. Concord Heritage Life Ins. Co.*, 149 N.H. 216, 220 (2003). Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *State v. Whittey*, 149 N.H. 463, 467 (2003). We review the trial court's interpretation of a statute *de novo*. *Remington Invs. v. Howard*, 150 N.H. 653, 654 (2004).

Statutes in derogation of the common law are to be interpreted strictly. *Sweeney v. Ragged Mt. Ski Area*, 151 N.H. 239, 241 (2004). While a statute may abolish a common law right, there is a presumption that the legislature has no such purpose. *Id.* If such a right is to be taken away, it must be expressed clearly by the legislature. *Id.* Accordingly, immunity

provisions barring the common law right to recover are to be strictly construed. *Id.*

Both RSA 212:34 and RSA 508:14 were adopted at a time when many States were enacting recreational use statutes, *i.e.*, statutes that limit the liability of landowners who make their land available for recreational use. *See* Note, *Liability of Landowners to Persons Entering for Recreational Purposes*, 1964 WIS. L. REV. 705, 705. New Hampshire was among the first ten States to enact a recreational use statute. *Id.* at 705 & n.2 (noting that ten States had enacted similar statutes "aimed at encouraging public recreational use of privately-owned forest and farm lands" including Michigan in 1953, New York in 1956, Maine, Minnesota, New Hampshire and Pennsylvania in 1961, Ohio, Tennessee and Wisconsin in 1963 and Virginia in 1964). The primary impetus behind this trend was "the need for additional recreational areas to serve the general public." COMMITTEE OF STATE OFFICIALS ON SUGGESTED STATE LEGISLATION, XXIV SUGGESTED STATE LEGISLATION 150 (1965) (hereinafter SUGGESTED STATE LEGISLATION).

Following this trend, the Committee of State Officials on Suggested State Legislation of the Council of State Governments drafted a model recreational use statute (model act), which was derived from Wisconsin's recreational use statute. *Id.*; *Conant v. Stroup*, 51 P.3d 1263, 1266 (Or. Ct. App. 2002). The model act provided, in pertinent part:

> *Section 1.* The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
>
> . . . .
>
> *Section 3.* Except as specifically recognized by or provided in Section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.
>
> *Section 4.* Except as specifically recognized by or provided in Section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
>
> > (a) Extend any assurance that the premises are safe for any purpose.
> >
> > (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

. . . .

*Section 6.* Nothing in this act limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

SUGGESTED STATE LEGISLATION, *supra* at 150-51. The council explained the purpose behind the model act as follows:

> Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreational resources available. Where the owners of private land suitable for recreational use make it available on a business basis, there may be little reason to treat such owners and the facilities they provide in any way different from that customary for operators of private enterprises. However, in those instances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.

*Id.* at 150. Thus, to fulfill this purpose, the recreational use statutes and model act limited the liability of private landowners who make their land available for public recreational uses "on the theory that it is not reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accommodating owner receives no compensation or other favor in return." *Id.*

The model act was subsequently adopted in various forms by more than three dozen States. *See Conant,* 51 P.3d at 1267. "Meanwhile, a number of states began to grapple with a basic drafting problem posed by the

wording of the model act." *Id.* As the Oregon Court of Appeals aptly described the dilemma:

> On the one hand, the model act expressed a basic *quid pro quo* in its declaration of policy, namely, permission *to the general public* to use private land for recreational purposes in exchange for immunity from liability for resulting injuries. On the other hand, the model act referred to the immunity as applying when a land owner granted permission to "any person," without a qualification that the person must be a member of the general public to whom permission had been granted.

*Id.* Accordingly, the Oregon court recognized that "if read literally and in isolation, the immunity provisions effectively would nullify the law of premises liability . . . : Any time an individual is invited to use an owner's back yard for croquet, immunity would apply." *Id.* Nonetheless, "[t]he response of the state courts who addressed the problem has been uniform." *Id.* These courts have construed the model act to effectuate its purpose and therefore conclude that "permission to 'any person' refers to any person *as a member of the general public* to use private property for recreational purposes." *Id.*; *see also Gibson v. Keith,* 492 A.2d 241, 244 (Del. 1985); *Snyder v. Olmstead,* 634 N.E.2d 756, 761 (Ill. App. Ct.), *rev. denied,* 642 N.E.2d 1304 (Ill. 1994); *Loyer v. Bucholz,* 526 N.E.2d 300, 302 (Ohio 1988); *Perrine v. Kennecott Mining Corp.,* 911 P.2d 1290, 1292-93 (Utah 1996); *LePoidevin by Dye v. Wilson,* 330 N.W.2d 555, 563 (Wis. 1983).

With this history of recreational use statutes in mind, we now turn to the language of the two recreational use statutes at issue here, RSA 212:34 and RSA 508:14.

## I. RSA 508:14

RSA 508:14, I, provides in pertinent part:

> An owner, occupant, or lessee of land, including the state or any political subdivision, who without charge permits *any person* to use land for recreational purposes or as a spectator of recreational activity, shall not be liable for personal injury or property damage in the absence of intentionally caused injury or damage.

(Emphasis added.)

The defendants argue that the phrase, "any person," evidences a legislative intent "to broadly immunize landowners in this state" from liability for negligent acts. The plaintiff argues that to construe RSA

508:14, I, as the defendants suggest would be in derogation of the common law. As set forth above, statutes in derogation of the common law are to be interpreted strictly. *Sweeney*, 151 N.H. at 241.

Other jurisdictions that have interpreted similar statutory provisions have construed the phrase "any person" as referring to "any person *as a member of the general public*." *Conant*, 51 P.3d at 1267; *see also Snyder*, 634 N.E.2d at 761 ("We believe that the purpose of the Recreational Use Act would not be advanced by applying the Act to a situation where an owner does not open his property to the public, but simply invites a few private persons to a picnic."); *Perrine*, 911 P.2d at 1293 (same); *LePoidevin by Dye*, 330 N.W.2d at 563 (holding that immunity is limited to the general public because the court does not "presume that the legislature intended ... to work a wholesale change in the entire law relating to the obligations of all landowners to all entrants to the land, including social guests invited to the premises for recreational purposes"). These courts have recognized that to hold otherwise "would immunize even homeowners from the negligence claims of social guests invited for recreational purposes." *Perrine*, 911 P.2d at 1293; *see also Mozier v. Parsons*, 852 F. Supp. 925, 932 (D. Kan. 1994) (holding that Kansas recreational use statute does not immunize homeowner from liability for wrongful death of child who drowned in backyard swimming pool).

In *Conant*, the Oregon Court of Appeals acknowledged that "[i]n isolation, the phrase 'any person' certainly is broad and unqualified." *Conant*, 51 P.3d at 1265. But, the court reasoned that "the term 'any' often carries with it limitations implicit from its context." *Id.* Thus, the court stated that "[t]he question in this case is whether the legislature intended the reference to 'any person' in [the statute] to refer literally to any single person or to any person as a member of a limited universe of persons to which the statute applies." *Id.* The court noted that the stated purpose of the statute was "to encourage owners of land to make their land available to the public." *Id.* (emphasis and quotation omitted). The court further noted that the disputed statutory language was taken from the model act, which has been interpreted uniformly by other jurisdictions to apply only when landowners permit members of the public generally to use private property for recreational purposes. *Id.* at 1266. Thus, the court held that the immunity granted by the recreational use statute "is limited to cases in which permission is given to the general public to use private land for recreational purposes." *Id.* at 1268. In reaching this holding, the court recognized that only this construction of the recreational use statute was consistent with the "purpose of making private land available to the public for recreational purposes while, at the same time, [avoiding] the inad-

vertent evisceration of common-law doctrines concerning the duties of landowners." *Id.* (emphasis omitted).

Moreover, RSA 508:14, I, does not clearly eliminate all common law duties of landowners toward all entrants on land. If the legislature wishes to accomplish such a result, it must do so clearly and explicitly. *See Sweeney*, 151 N.H. at 241. Therefore, our strict interpretation of RSA 508:14, I, is consistent with our holdings that we will not interpret a statute to abrogate the common law unless the statute clearly expresses that intent. *See, e.g., id.*

■ Accordingly, we hold that the phrase "any person" refers to "any person *as a member of the general public.*" *See Conant*, 51 P.3d at 1267. Thus, for RSA 508:14, I, to grant immunity, private landowners must permit members of the general public to use their land for recreational purposes. Here, the defendants' land was not opened to the general public but rather was used for a private birthday party. Accordingly, the trial court erred in granting summary judgment and ruling that the defendants were entitled to immunity under RSA 508:14, I.

## II. RSA 212:34

We next turn to RSA 212:34, which provides:

I. An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry or use *by others* for hunting, fishing, trapping, camping, horseback riding, water sports, winter sports or OHRVs . . . , hiking, sightseeing, or removal of fuelwood, or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in paragraph III hereof.

II. An owner, lessee or occupant of premises who gives permission *to another* to hunt, fish, trap, camp, ride horseback, hike, use OHRVs . . . , sightsee upon, or remove fuelwood from, such premises, or use said premises for water sports, or winter sports does not thereby:

(a) Extend any assurance that the premises are safe for such purpose, or

(b) Constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed, or

(c) Assume responsibility for or incur liability for an injury to person or property caused by any act of such person to whom permission has been granted except as provided in paragraph III hereof.

III. This section does not limit the liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or

(b) For injury suffered in any case where permission to hunt, fish, trap, camp, ride horseback, hike, use for water sports, winter sports or use of OHRVs ... , sightsee, or remove fuelwood was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or

(c) The injury caused by acts of persons to whom permission to hunt, fish, trap, camp, ride horseback, hike, use for water sports, winter sports or use of OHRVs ... , sightsee, or remove fuelwood was granted, to third persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger.

(Emphasis added).

The defendants argue that under RSA 212:34, the legislature intended "to broadly immunize landowners in this state" from liability for negligent acts. The plaintiff argues that to construe the statute as the defendants suggest would be in derogation of the common law. We look to the language of the statute to determine whether it clearly abrogates all landowners' common law duties owed to all entrants on land for recreational purposes. *See Sweeney*, 151 N.H. at 241; *Jacobson*, 150 N.H. at 515. We further note that we do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme. *Nilsson v. Bierman*, 150 N.H. 393, 395 (2003). When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes. *Id.*

Both RSA 212:34 and RSA 508:14, I, limit the liability of landowners toward entrants on land in circumstances that involve recreational activities. Because RSA 212:34 deals with a similar subject matter as RSA 508:14, I, the statutes should be construed so that they do not contradict

each other. *Id.* Therefore, RSA 212:34 likewise should be construed to grant immunity only to landowners who open their land to the general public.

The language of RSA 212:34 is virtually identical to the model act. *Compare* RSA 212:34, I & II *with* SUGGESTED STATE LEGISLATION, *supra* at 151, secs. 3 & 4. In addition, RSA 212:34 was adopted during the period in which the model act was proposed and there was a movement among many States to provide immunity to landowners through recreational use statutes. Therefore, we look to similar statutes from other jurisdictions and the model act for guidance in interpreting RSA 212:34.

■ As set forth above, the purpose of the model act is to encourage private landowners to make their land available for public recreational uses by limiting their liability. SUGGESTED STATE LEGISLATION, *supra* at 150. Moreover, RSA 212:34 does not clearly eliminate all common law duties of landowners toward all entrants on land. If the legislature wishes to accomplish such a result, it must do so clearly and explicitly. *See Sweeney,* 151 N.H. at 241. Accordingly, we hold that the terms "others" and "another" in RSA 212:34 refer to the general public. Thus, for RSA 212:34 to grant immunity, private landowners must permit members of the general public to use their land for one of the listed recreational purposes.

This conclusion is buttressed by an analysis of RSA 212:34, II and its relation to the common law as it existed when the statute was adopted in 1961. At that time, we followed the traditional three-pronged classification of entrants on land in determining the obligations of landowners. *See Ouellette v. Blanchard,* 116 N.H. 552, 553-54 (1976). These classifications are no longer used in our duty of care analysis, but are useful in determining the legislative intent at the time RSA 212:34 was enacted. They provided that: (1) an entrant without the consent of the landowner was a trespasser as a matter of law and the landowner's liability was limited to intentional injuries; (2) an entrant on land with the permission of the owner but for the entrant's purposes was a licensee and entitled only to a warning of hidden dangers; and (3) an invitee was an entrant on the property for the transaction of business with the occupier and as to him or her the ordinary rules of negligence were applicable to the occupier. *Id.*; *see generally Locke v. Payne,* 81 N.H. 266 (1924) (licensees); *True v. Creamery,* 72 N.H. 154 (1903) (invitees); *Clark v. Manchester,* 62 N.H. 577 (1883) (trespassers). *But see Ouellette,* 116 N.H. at 557 (eliminating use of classifications of entrants).

The third category of entrants, invitees, was further broken down into two separate groups of entrants: business visitors and public invitees. 1 N. LANDAU & A., PREMISES LIABILITY LAW AND PRACTICE § 1.05[4], at 1-116

to 1-117 (2000). "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." *Id.* "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Id.* With regard to public invitees, there is no requirement that they pay admission or confer an economic benefit upon the landowner. *Id.*

In contrast, licensees include the following types of entrants: social guests, members of the landowner's household, "solicitors, loiterers, persons permitted by acquiescence to use short cuts across the premises, sightseers, persons seeking shelter or assistance, and trespassers and invitees whose status has changed after entering the premises." *Id.* § 1.05[3], at 1-86. Notably, a social guest, although expressly invited onto the premises by the landowner, is a licensee and not an invitee. *Id.*

Accordingly, the common law in 1961 defined invitees as including members of the general public permitted on the landowner's premises. A private social guest permitted on the landowner's premises was not an invitee, but rather a licensee.

RSA 212:34, II only grants immunity to landowners with regard to entrants on land for certain recreational activities who otherwise would be classified as invitees. As a result, the scope of the immunity statute is limited to landowners who permit the general public to use the premises for the listed recreational activities and, but for the statute, would be considered invitees. *See* RSA 212:34, II (a). The statute does not extend immunity to landowners with regard to entrants on land that are social guests or other licensees. Therefore, the statute contemplates that immunity would only be extended to landowners who open their land to the general public.

Here, the defendants did not make their land available to the public. Rather, McNeil and Jaycob were allowed to use their land and swimming area for a private birthday party. Accordingly, the trial court erred in granting summary judgment and ruling that the defendants were entitled to immunity under RSA 212:34.

The defendants urge us to adopt the holding in *Collins v. Martella*, 17 F.3d 1, 4 (1st Cir. 1994), that RSA 212:34 and RSA 508:14 do not require that the land at issue be open to the general public. In reaching this decision, the First Circuit recognized that the statutes "should be narrowly construed because they are in derogation of the common law," but declined to "read into these statutes a limitation that the legislature left out." *Id.* The court further reasoned that, "[u]nlike similar statutes in other jurisdictions and the model recreational use statute proposed by the Council of State Governments, [RSA 212:34 and RSA 508:14] do not

contain any language suggesting a requirement that the land at issue must be . . . open to the general public." *Id.*

We decline to adopt the holding in *Collins*. We have implicitly recognized that a landowner owes a duty to certain entrants on land who are present for recreational purposes. *See, e.g., Morse v. Goduti*, 146 N.H. 697 (2001) (ten-year-old developmentally disabled child drowned in neighbor's man-made pond); *Lemay v. Burnett*, 139 N.H. 633 (1995) (plaintiff was injured while diving in defendant's backyard swimming pool). Thus, to adopt the holding in *Collins* could be viewed as inconsistent with these cases.

In addition, we find it appropriate to rely upon similar statutes from other jurisdictions and the model act when interpreting RSA 212:34 and RSA 508:14, I. In *Collins*, the First Circuit pointed to Connecticut's statute, which specifically states that "an owner of land who makes all or any part of the land available to the public without charge . . . for recreational purposes owes no duty of care." Conn. Gen. Stat. § 52-557g (a) (1991). The difference in language, however, does not foreclose our reliance upon the interpretation of statutes in other jurisdictions similar to our own. The statutes of numerous jurisdictions do not contain any specific reference to the general public, but they have been interpreted to include such a limitation. *See Conant*, 51 P.3d at 1265; *Perrine*, 911 P.2d at 1292-93. We acknowledge that these decisions in part rely upon the purpose section of the statute or legislative history, which generally indicate that the statute's goal is "to make [] land available to the public for recreational purposes." *Conant*, 51 P.3d at 1265 (quotation and emphasis omitted).

Nonetheless, as noted above, both RSA 212:34 and RSA 508:14, I, were enacted around the same time that the model act was proposed and during the period in which there was a movement among many States to provide immunity to landowners through recreational use statutes. In addition, the language of RSA 212:34 and RSA 508:14, I, is similar to that of numerous other States and the model act. *Compare* RSA 212:34, I & II *with* SUGGESTED STATE LEGISLATION, *supra* at 151 secs. 3 & 4 *and* RSA 508:14, I *with* Or. Rev. Stat. § 105.682 (2003). Therefore, it is appropriate to look to similar statutes from other jurisdictions for guidance in interpreting RSA 212:34 and RSA 508:14, I.

Finally, as the First Circuit aptly noted, statutes in derogation of the common law should be narrowly construed. *See Collins*, 17 F.3d at 4. Because the legislature did not clearly abrogate the common law duties of landowners toward all entrants on land, we narrowly construe RSA 212:34 and RSA 508:14, I, as providing immunity only to landowners who open their land to the general public. Accordingly, we decline to adopt the holding in *Collins*.

Here, the defendants' land was used for a private birthday party, which was not open to the general public. Therefore, RSA 212:34 and RSA 508:14, I, do not apply.

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.